173 N.J. Super. 188 (1980)
413 A.2d 973
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
OLIVER DEVATT AND BETTY DEVATT WYDNER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1980.
Decided April 1, 1980.
*191 Before Judges MATTHEWS, ARD and POLOW.
Hauck and McIntyre, attorneys for appellants (Barrie T. McIntyre, of counsel and on the brief).
John J. Degnan, Attorney General, attorney for respondent (Helen E. Szabo, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
Pursuant to leave to appeal interlocutory orders, defendants seek reversal of the termination of their participation in pretrial intervention (P.T.I.) which thus permits the State to proceed to prosecute the criminal charges pending against them.
Although they have since been divorced, defendants were still husband and wife at the time the indictment against them was filed in September 1977. They had been charged with having defrauded the Hunterdon County Welfare Board of $2,394 by failing to report income received from other sources, in violation of N.J.S.A. 2A:111-2, and were admitted into the Pretrial Intervention Program of Hunterdon County. A first postponement order was executed on August 9, 1978 on condition that defendants *192 make restitution of the $2,394 before the end of the first three-month postponement, pursuant to R. 3:28(b).[1]
Before the expiration of the first postponement period, notice of a termination hearing scheduled for November 17, 1978 was forwarded to appellants. The record of that hearing indicates that the original postponement period would not have expired until November 25, 1978. It does not appear that appellants were present. However, they were represented by counsel who participated in a discussion of the problem with the trial judge, the first assistant prosecutor and the P.T.I. program director. Since proper notice had not been served on appellant Wydner, and in order to give the parties an opportunity to attempt to work out a "restitution program," the hearing was rescheduled for December 1, 1978.
The record of the December 1, 1978 hearing indicates that although defendant Wydner was present, she did not testify. The proceeding consisted solely of discussions in which defense counsel, the prosecutor and the P.T.I. director participated together with the trial judge. Representations were made on behalf of defendants that it was impossible for them to make full restitution within the first postponement period and that they could not comply even if the second three-month postponement were to be granted pursuant to R. 3:28(c). Counsel offered to have defendants each pay $25 a month toward restitution, but that was summarily rejected by the prosecutor. No testimony of any kind was taken nor was any request made to present testimony or evidentiary material. However, when defense counsel represented that his clients would be unable to make full restitution within the second three-month postponement *193 period, the court responded: "I'm going to terminate the PTI program as far as they're concerned."
The trial judge indicated that the order terminating pretrial intervention would be entered "because of their failure to comply with the conditions of pretrial intervention." He further expressed his concern that in order for the program to be successful, it must maintain its credibility by requiring participants to comply with its conditions. This, the court indicated, defendants have failed to do.
Defendants argue that the order of termination under these circumstances denied them due process and equal protection of the law. They urge that "procedural due process cries out for a factual hearing in which the defendants can confront and cross-examine the accusors in the evaluation report and present evidence or material in their own behalf." Although defendants had the opportunity to do so and failed to offer any such proofs or evidence, nevertheless we are satisfied that the record lacked factual support upon which to determine that the failure to make restitution within the three-month time limit is in itself, without consideration of the surrounding circumstances, sufficient to support the termination of pretrial intervention. The court was provided with no information, except for general comments of counsel, with regard to the financial status of the parties, their responsibilities and needs, their income and expenses, their assets and ability to borrow. Nor is there any indication that such information was sought by the pretrial intervention staff for consideration by the court.
Our first inquiry concerns the applicability of principles of procedural due process to a proceeding of this nature. The question is whether it involves a "liberty or property" interest within the ambit of the Fourteenth Amendment to the United States Constitution. We conclude that it does. See Wolff v. McDonnell, 418 U.S. 539, 557-558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951-952 (1974); Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). We are satisfied *194 that the conditional liberty at stake in termination proceedings is closely analogous to that involved in probation or parole revocation applications. See Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, supra.
In Gagnon v. Scarpelli and Morrissey v. Brewer the United States Supreme Court held that constitutional due process requires a hearing before either probation or parole may be revoked. The prospect of termination of a pretrial diversionary program also threatens "grievous loss" for which procedural fairness becomes essential. See Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817, 852 (Frankfurter, J. concurring). It is evident, then, that before termination may be ordered, minimum due process requires the State to afford defendants an opportunity to be confronted with evidence in support of or to present evidence against the conclusion that mere noncompliance with a condition justifies withdrawal of the diversionary privilege. Thus, the mere failure to make full restitution within the prescribed time period may not in itself support the conclusion that defendants have failed or refused to cooperate in such a wilful and knowing manner as to have forfeited their right to further participation.
Although the procedure on a termination hearing need not follow all of the formalities of a criminal trial nor be limited by the strict rules of evidence, the court must determine whether a factual basis exists for the conclusion that defendants have wilfully violated PTI conditions in a manner or under such circumstances as to justify termination of their right to further participation in the program. We see no reason to distinguish such a determination from that required in probation revocation proceedings. See State v. Zachowski, 53 N.J. Super. 431 (App. Div. 1959); State v. Moretti, 50 N.J. Super. 223 (App.Div. 1958).
Our primary concern must be whether revival of the criminal process is the consequence of an honest and unintentional inability to repay within the brief time allowed, thereby *195 exposing these defendants to potential deprivation of liberty because they are indigent, although others facing similar charges but with access to immediate funds are permitted to enjoy the advantages of the diversionary system. See State v. De Bonis, 58 N.J. 182 (1971); People v. Williams, 247 Cal. App.2d 394, 55 Cal. Rptr. 550 (D.Ct.App. 1966). Even where restitution is an appropriate condition of probation, the offender may not be institutionalized nor probation terminated solely because of inability to pay. Cf. Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); State v. De Bonis, supra. See, also, State In the Interest of D.G.W., 70 N.J. 488 (1976). A similar standard is appropriately applicable in pretrial intervention termination proceedings.
On remand the judges must determine whether the failure to comply with the condition for restitution within the time allowed under the circumstances which are shown to have existed supports the conclusion that termination of defendants' participation in the program is justified. The proof need not be established to any particular degree but must satisfy the judge in the exercise of sound discretion that the application to terminate is warranted. This requires a conscientious judgment which takes into account the particular circumstances of the individuals in deciding their fitness to continue within the diversionary program. State v. Lebbing, 158 N.J. Super. 209, 218 (Law Div. 1978).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The rule has since been amended to permit a first postponement of six months and a similar second postponement thus permitting an aggregate diversionary period of no more than one year. The total allowable time in PTI has thus been doubled since the order herein was entered. R. 3:28(b), (c).