183 N.J. Super. 86 (1981)
443 A.2d 252
STATE OF NEW JERSEY, PLAINTIFF,
v.
MARVIN WILSON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 15, 1981.
*88 Miriam Brody, Assistant Prosecutor, for plaintiff (George L. Schneider, Essex County Prosecutor, attorney); Enid Waxler McDonough, Assistant Prosecutor, on the brief.
Diane M. Regan, Assistant Public Defender, for defendant (Stanley C. Van Ness, Public Defender, attorney).
NEWMAN, J.S.C.
This matter is before the court upon the State's motion to terminate Marvin Wilson from further participation in the Essex County Pretrial Intervention Program. Wilson was originally admitted into Pretrial Intervention (hereinafter PTI) on November 17, 1980, after having been charged with third-degree possession of a weapon in Indictment 2956-79. During his second period of diversion, on May 28, 1981, the Essex County grand jury indicted Wilson for second-degree robbery, allegedly committed on January 23, 1981. Wilson apparently neglected to *89 inform PTI of the arrest or of the indictment, although there is a provision in his participation agreement requiring him to do so. Based on this indictment, termination proceedings were instituted.
A threshold question, important to the administration of PTI, has been raised as to the due process requirements included within the "summary hearing" required by N.J.S.A. 2C:43-13(e) before termination from PTI may be accomplished. The divertee argues that PTI termination hearings must comply fully with due process requirements, including confrontation and cross-examination. It is contended that the State must present live testimony, with a full opportunity to cross-examine, and that the mere presentation of the indictment is insufficient compliance with the summary hearing to which the divertee is entitled. In response, the State argues that confrontation and cross-examination are not required if the indictment is presented at the termination hearing. The State maintains that witnesses have already been presented before an independent body which returned an indictment, prima facie proof that a crime has been committed. Since a judge need only have reason to believe that a violation occurred in order to terminate PTI, presentation of the indictment itself should be sufficient.
At the outset it should be noted that the right to a hearing before termination of a diversion program has been clearly spelled out in N.J.S.A. 2C:43-13. Subsection (e) of that statute provides:
Upon violation of the conditions of supervisory treatment, the court shall determine, after summary hearing, whether said violation warrants the participant's dismissal from the supervisory treatment program, modification of the conditions of continued participation in that or another supervisory treatment program. Upon dismissal of participant from the supervisory treatment program, the charges against the participant may be reactivated and the prosecutor may proceed as though no supervisory treatment had been commenced. [N.J.S.A. 2C:43-13(e)]
The statute, however, does not define the requisites of a "summary hearing."
*90 Two New Jersey decisions have dealt with PTI terminations and have analogized them to parole and probation revocations. These cases have suggested that the "grievous loss" suffered upon probation and parole revocation is similar to that suffered by terminated PTI participants, and that the due process required for termination of each type of program should be identical. State v. Devatt, 173 N.J. Super. 188, 194 (App.Div. 1980); State v. Lebbing, 158 N.J. Super. 209, 214-15 (Law Div. 1978). Each of these cases, however, is distinguishable from the case at bar on the facts. Additionally, a comparison of the statute and guidelines governing PTI and the statutes and case law governing probation and parole leads to the conclusion that these programs and PTI, while similar, are far from identical. A discussion of the Lebbing and Devatt decisions would be in order.
In State v. Lebbing the divertee had been arrested during the course of his intervention program, and had neglected to inform PTI of the arrest for five months. At the time of this disclosure Lebbing was in his second period of supervision, and had entered a residential alcoholic treatment center as had been recommended by PTI. When the prosecutor moved for termination, the divertee requested an evidentiary hearing so that he could challenge the termination report which concluded that he was not amenable to the concepts of PTI and short-term rehabilitation.
The court proposed that the liberty interest at stake was similar in PTI, probation and parole revocation proceedings. Following the lead of the United States Supreme Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (procedural due process applied to parole revocations), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (due process applied to probation revocation), the court in Lebbing extended procedural due process protection to PTI terminations. Thus, a hearing must be held at a meaningful time and in a meaningful manner. 158 N.J. Super. at 216. A *91 meaningful manner entails (a) written notice of the claimed violations of the conditions of PTI; (b) disclosure to defendant of the evidence relied upon; (c) the opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and examine adverse witnesses, and (e) a statement of reasons for termination by the presiding judge. Id. at 216.
The second holding in Lebbing was that once the requisite hearing has been held, the determination whether conditions of PTI have been breached requires "no particular source, manner or degree of proof...." Id. at 218. The judge is free to exercise discretion; it is only necessary that there be "reasons to believe" that violations charges are true. Ibid.
The Appellate Division has also addressed the issue of procedures to be followed in PTI termination proceedings. State v. Devatt, supra, was an appeal from a termination for violations of conditions of PTI. The participants had been diverted from prosecution after having been charged with welfare fraud; the violation consisted of not making restitution payments on schedule. The court held that before termination, these divertees were entitled to a hearing at which they could present evidence and be confronted with the evidence against them. The mere failure to make restitution within a prescribed time, could not, in and of itself, justify termination.
The Devatt court had this to say about the procedure required at PTI termination hearings:
Although the procedure on a termination hearing need not follow all of the formalities of a criminal trial or be limited by the strict rules of evidence, the court must determine whether a factual basis exists for the conclusion that defendants have willfully violated PTI conditions in a manner or under such circumstances as to justify termination of their right to further participation in the program. We see no reason to distinguish such a determination from that required in probation revocation proceedings. [173 N.J. Super. at 194]
The opinion approved the Lebbing rule that no particular degree of proof of violation is necessary to terminate PTI. The decision to terminate requires a conscientious judgment which takes into *92 account the particular circumstances of individuals in deciding their fitness to continue within the diversionary program. Id. at 195.
It is clear that minimum procedural due process considerations must be applied to PTI termination proceedings. Due process, however, does not require that a pat procedural formula must be applied to every termination hearing, regardless of the facts. Termination hearings, like probation revocation hearings, should provide "fair treatment for the defendant at this stage so he will not be made a victim of whim and caprice." State v. Zachowski, 53 N.J. Super. 431, 440 (App.Div. 1959). Fair treatment, however, does not require that a termination hearing must become an evidentiary hearing of such proportions that a mini-criminal trial ensues. Indeed, if that were required, it would serve to defeat one of the primary objectives of PTI, which is to alleviate the overcrowded and congested criminal docket. State v. Leonardis, 71 N.J. 85, 98 (1976); see, also, "Report of Supreme Court Committee on PTI," 108 N.J.L.J. 485 (1981). Holding an evidentiary hearing which would in substance amount to a pre-criminal trial on the charges for which defendant was indicted would hardly result in saving court time. To the contrary, requiring the prosecutor to present evidence before the grand jury, then again at a PTI termination hearing, and finally at the criminal trial of the matter would inevitably cause an unnecessary duplication of time and effort.
The extent of the evidentiary hearing required to be held when a PTI participant's program is to be terminated should depend upon the facts of the individual case. The nature of the alleged violation, the participant's record in PTI and the nature and legislative purpose of diversion must all be considered. Indeed, this is not a novel idea. The court in State v. Zachowski, supra, discussed the type of hearing envisioned at a probation revocation. There the court observed that "the essential meaning of what is required by our statute to constitute an equivalent `summary hearing' must be derived from the concept *93 of fair play...." Id. 53 N.J. Super. at 440. The court in Zachowski continued, stating that "the nature of the hearing and the procedure required therefore, should and will vary to meet the circumstances of the particular occasion." Ibid. The court found that although a hearing is necessary in all cases, the hearing will be more involved if the defendant was charged with "violation by behavior not in itself necessarily criminal at all, or, at least, not yet established to be such by admission or conviction." Id. at 441.[1]State v. Zachowski was decided when the statute governing probation violation proceedings was N.J.S.A. 2A:168-4. That statute provided for a "summary hearing" before revocation, as does N.J.S.A. 2C:43-13(e) governing PTI terminations.
The PTI participants in Lebbing and Devatt were given plenary hearings, but the process they received fit the nature of their violations. The violation in this case can be distinguished from those in Lebbing and Devatt. The participants in Devatt were to be terminated for behavior that was entirely noncriminal, i.e., their failure to make restitution in a timely fashion. As the court pointed out in Devatt:
Our primary concern must be whether revival of the criminal process is the consequence of an honest and unintentional ability to repay within the time allowed, thereby exposing these defendants to potential deprivation of liberty because they are indigent, although others facing similar charges but with access to immediate funds are permitted to enjoy the advantages of the diversionary system ... Even where restitution is an appropriate condition of probation, the offender may not be institutionalized nor probation terminated solely because of inability to pay. [Id. 173 N.J. Super. at 195]
*94 Of course, underlying the Devatt decision was a sensitivity to the equal protection underpinnings of a divertee who lacked the means to make restitution. See State v. DeBonis, 58 N.J. 182 (1971).
The divertee in Lebbing was in his second period of diversion when termination was recommended. He had been admitted to a residential alcoholic treatment center, for this was a condition of his supervisory program. During this second diversion period he informed PTI that he had been arrested for uttering a forged check during his first period of diversion. Lebbing requested an evidentiary hearing to challenge the PTI program's contention in the termination report that he was "not amenable to short term rehabilitation and the concepts of PTI...." 158 N.J. Super. at 213. Although uttering a forged check is criminal behavior, Lebbing's arrest occurred very shortly after the program began. Subsequently, he submitted to alcoholic treatment and informed his counsellors of the arrest. Apparently, there was no showing of any subsequent criminal behavior during the second period of diversion.
In contrast, Marvin Wilson was indicted for a violent crime, allegedly committed some two months after enrollment in PTI. The indictment was returned at the beginning of defendant's second period of diversion, and he did not notify PTI of the charge or of the indictment, a condition of his participation in the program. Although an indictment is not a conviction, it is a strong indicator that criminal behavior has taken place. An indictment is returned if it is supported by a prima facie showing that the accused has committed a crime. State v. Porro, 152 N.J. Super. 179, 185 (App.Div. 1977), app. dism. 77 N.J. 504 (1978), cert. den. 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978). An indictment requires a formal presentation before an independent body. The objective fact of a divertee being indicted thus does not contain the same kind of risk that a divertee will be subject to termination as the "victim of whim and caprice" alluded to in the Zachowski opinion, 53 N.J. Super. at *95 440. Thus, the nature of Wilson's violation is different from those in Lebbing and Devatt.
Moreover, rather than focusing on the purposes of PTI and the type of violation alleged, the courts in Devatt and Lebbing determined the extent of the termination hearing by comparing PTI and probation and parole. Both courts decided that identical process is required before termination of any of these programs. However, these programs are not necessarily analogous. The liberty interests at stake can be distinguished, and the statutes currently in effect which govern termination proceedings in PTI and probation revocation differ on their faces.
A PTI participant who is terminated has the indictment reactivated and is returned to the criminal process. No liberty interest is directly interdicted by this action and it certainly cannot be said to rise to the same level as the grievous loss suffered by a probationer or parolee, who faces a substantial risk of incarceration upon revocation. An adjudication of guilt has already been made and the defendant on probation is already in a conditional liberty status. Similarly, a parolee has the same threat posed to his freedom when he violates his parole conditions and may face reincarceration. Insofar as PTI is concerned, there is no adjudication of guilt, and a terminated divertee may successfully run the trial gauntlet, with an acquittal if that option is pursued. Indeed, many of those diverted have marginal criminal involvement and no appreciable jail exposure. Other first-time adult offenders have the presumption of nonincarceration available to them under the Code of Criminal Justice where the underlying offense is for a third- or fourth-degree crime. N.J.S.A. 2C:44-1(e). Thus, there are substantial and real distinctions between the liberty interest and the likelihood of its loss in probation, parole and PTI cases. It is axiomatic that more exacting procedural protection must surround proceedings in which defendant's liberty is more seriously jeopardized as it is where probation and parole revocation proceedings are instituted.
*96 Additionally, the statutes currently in effect and governing PTI and probation terminations do not provide for identical hearing procedures. The Devatt and Lebbing violations both occurred when PTI was exclusively governed by R. 3:28 and the guidelines thereunder, and when N.J.S.A. 2A:168-4 governed probation terminations. Our Code of Criminal Justice has since been enacted. N.J.S.A. 2C:43-13(e) provides for a "summary hearing" before PTI termination, while 2C:45-4 spells out the requisites of a probation termination hearing with much more specificity. The probation termination hearing requires confrontation. The PTI statute does not expressly require this procedural step. Furthermore, the Legislature, upon the enactment of the Code, specifically changed the statutory language regarding probation hearings. The language in N.J.S.A. 2A:168-4 had originally been "summary hearing," but now contains a list of minimum procedures necessary. If the Legislature had intended to require identical process for probation and PTI terminations, it could have easily done so. The fact that the Legislature did not choose to do so should not be viewed as accidental.
What we have stated really boils down to the conclusion that the use of an indictment, absent live testimony, does not deprive the divertee of any due process right of confrontation and cross-examination when a summary hearing is held to terminate participation in PTI. The Lebbing decision, in our view, did not contemplate otherwise. No indictment had been returned in Lebbing. In the absence of an indictment, the risk that divertee would be terminated by reason of whim or caprice called for the safeguard of confrontation. Surely, fairness may mandate a more comprehensive hearing if the complained of behavior is noncriminal. Cross-examination of adverse witnesses may serve as an important safety valve in such circumstances. Due process, however, does not require a mini-criminal trial before termination of a PTI participant who is indicted for a crime.
*97 The courts in Devatt and Lebbing have ruled that although a hearing comporting with due process must be held before termination, no particular source or standard of proof is required. This means that a judge who receives the State's presentation of an indictment must afford the divertee an opportunity to explain the surrounding circumstances, if the divertee chooses to do so. The judge must also permit the PTI counsellor's testimony regarding the divertee's progress in PTI, and allow cross-examination by the divertee. The court will then have enough information to formulate "reasons to believe" whether a violation has occurred, and whether termination should otherwise be effectuated. The "summary hearing" contemplated by N.J.S.A. 2C:43-13(e) requires no more. A hearing in light of the views expressed in this opinion will be held on due notice to the parties involved.
NOTES
[1] Based on this court's experience in the administration of PTI in Essex County, the typical termination case involves a divertee who fails to report to the program. The probation officer then appears in court and is subject to cross-examination as to the divertee's failure to report. Other circumstances leading to termination proceedings are change of address without advising the probation officer, and the failure to perform community service. Again, these other grounds are invariably coupled with a failure to report. Thus, in the great majority of termination hearings confrontation is available to the divertee.