221 N.J. Super. 16 (1987)
533 A.2d 405
STATE OF NEW JERSEY
v.
TODD CHRISTOPHER FENTON, DEFENDANT.
STATE OF NEW JERSEY
v.
ANTHONY WILBERT GILMORE, DEFENDANT.
STATE OF NEW JERSEY
v.
FRANK CHRISTALDI, DEFENDANT.
Superior Court of New Jersey, New Jersey Superior Court, Law Division Burlington County.
Decided June 9, 1987.
*17 Terri-Anne Duda, Burlington County Assistant Prosecutor, for the State (Stephen G. Raymond, Prosecutor).
Ernest Bongiovanni for Defendants Fenton and Gilmore (Timothy S. Hughes, Deputy Public Defender).
John P. Yetman, Jr. for Defendant Christaldi.
HAINES, A.J.S.C.
Todd Christopher Fenton, Anthony Wilbert Gilmore and Frank Christaldi have been admitted to the Pretrial Intervention Program ("PTI"). The following conditions, among others, were accepted by them at the time of their admission:

I will call my counselor if I must break an appointment; I will speak to him/her in person; not leave a message. I will not miss a meeting without proving to my counselor that there was valid reason for my absence or I will be rejected/terminated.

*18 From this date onward my re-arrest on any charge or any involvement with illegal behavior is grounds for being dropped by Pretrial. I also understand that if these occur and I do not tell my counselor I will be rejected/terminated. I understand that cooperation is not simply a matter of being present at meetings with my counselor but a matter of willingness and openess in dealing with my problem areas. I will cooperate.
All three defendants have now been charged with criminal offenses. Fenton has been indicted; Gilmore and Christaldi have been arrested. None has been convicted. Fenton reported his criminal charge to his PTI counselor. Gilmore and Christaldi did not. Christaldi has also failed to keep two appointments with his counselor. The PTI Director moves for the termination of their PTI programs by reason of their violation of the PTI conditions to which they are subject. The Prosecutor supports the applications, offers proof of the indictment and the arrests, and argues that, standing alone, they are sufficient to carry the burden of proof. The matters are consolidated for the purpose of addressing their common arrest-indictment issues in this opinion.
N.J.S.A. 2C:43-13e provides:
Upon violation of the conditions of supervisory treatment, the court shall determine, after summary hearing, whether said violation warrants the participant's dismissal from the supervisory treatment program or modification of the conditions of continued participation in that or another supervisory treatment program. Upon dismissal of participant from the supervisory treatment program, the charges against the participant may be reactivated and the prosecutor may proceed as though no supervisory treatment had been commenced.
Guideline 8 to R. 3:28 states:
The decisions and reasons therefor made by the designated judges (or Assignment Judges) ... in ordering termination from the program ..., in all cases must be reduced to writing and disclosed to defendant.
Our statutes and rules provide no further illumination in these areas.
The courts of New Jersey have addressed PTI termination rules and procedures on three occasions:

(1) State v. Lebbing, 158 N.J. Super. 209 (Law Div. 1978)
Defendant, admitted to a PTI program after being indicted for fraud, was again indicted, for forgery. The State moved to *19 terminate his program. The court, in a first-time opinion, addressed the question of defendant's right to due process in a termination proceeding. It held that the defendant was entitled to:
(a) written notice of the claimed violations of the conditions of PTI;
(b) disclosure ... of the evidence relied on;
(c) the opportunity to be heard in person and to present witnesses and documentary evidence;
(d) the right to confront and examine adverse witnesses;
(e) a statement of reasons for termination by the presiding judge. [158 N.J. Super. at 216].
The court also addressed decisional standards:
A termination hearing requires a determination of the factual basis underlying the alleged violation of PTI conditions and an exercise of discretion in determining whether, under the particular circumstances, participation in the program ought to be terminated.... Thus, breach of the conditions of PTI and the unfitness of the divertee to continue in the program need not be established beyond a reasonable doubt; no particular source, manner or degree of proof shall be required. The court is only required to have "reasons to believe" that the violation charges are true. Beyond that the presiding judge must exercise a sound discretion in deciding whether or not to terminate. This implies a conscientious judgment which takes account of the particular circumstances in deciding the fitness vel non of the continuation of the defendant's diversionary status. [158 N.J. Super. at 217-218].

(2) State v. Devatt, 173 N.J. Super. 188 (App.Div. 1980)
The State moved for PTI termination because the defendants had failed to comply with a restitution condition. The defendants claimed indigency. The court held that they were entitled to minimum due process: "Minimum due process requires the State to afford defendants an opportunity to be confronted with evidence in support of or to present evidence against the conclusion that mere noncompliance with a condition justifies withdrawal of the diversionary privilege." 173 N.J. Super. at 194. It added:
Although the procedure on a termination hearing need not follow all of the formalities of a criminal trial nor be limited by the strict rules of evidence, the court must determine whether a factual basis exists for the conclusion that defendants have wilfully violated PTI conditions in a manner or under such *20 circumstances as to justify termination of their right to further participation in the program. [173 N.J. Super. at 194].
And:
The proof need not be established to any particular degree but must satisfy the judge in the exercise of sound discretion that the application to terminate is warranted. This requires a conscientious judgment which takes into account the particular circumstances of the individuals in deciding their fitness to continue within the diversionary program. [173 N.J. Super. at 195].

(3) State v. Wilson, 183 N.J. Super. 86 (Law Div. 1981).
Defendant, admitted to PTI after being indicted for a weapons offense, was again indicted, for second degree robbery. The State, offering only the indictment as a reason and as proof, moved to terminate the defendant's PTI program. The defendant claimed that he was entitled to a full due process hearing.
The court, citing Devatt and Lebbing as to due process requirements, nevertheless held that proof of indictment sufficiently supported the State's motion provided the divertee was given an opportunity to explain surrounding circumstances. The PTI counselor testified and cross-examination of him was allowed. The court said:
... the use of an indictment, absent live testimony, does not deprive the divertee of any due process right of confrontation and cross-examination when a summary hearing is held to terminate participation in PTI. The Lebbing decision, in our view, did not contemplate otherwise. No indictment had been returned in Lebbing. In the absence of an indictment, the risk that divertee would be terminated by reason of whim or caprice called for the safeguard of confrontation. Surely, fairness may mandate a more comprehensive hearing if the complained of behavior is noncriminal. Cross-examination of adverse witnesses may serve as an important safety valve in such circumstances. Due process, however, does not require a mini-criminal trial before termination of a PTI participant who is indicted for a crime.
The courts in Devatt and Lebbing have ruled that although a hearing comporting with due process must be held before termination, no particular source or standard of proof is required. [Once the court has received the indictment, heard the divertee's explanation and the PTI counsellor's testimony it] .. . will then have enough information to formulate "reasons to believe" whether a violation has occurred, and whether termination should otherwise be effectuated. [183 N.J. Super. at 96-97].
*21 Devatt and Wilson did not include the right to counsel in their list of due process guarantees. These courts equated PTI termination hearings with violation of parole and probation hearings and therefore concluded that since due process rights were required by the latter they must be required by the former. Wilson distinguished PTI termination and parole-probation violation hearings, holding that the extent of due process rights to be accorded participants in the former proceeding should be determined on a case-by-case basis. It held that rights of confrontation and cross-examination were not infringed when proof of the violation of PTI conditions was merely proof of indictment without live testimony. 183 N.J. Super. at 96. The right to counsel was not discussed.
When Lebbing was decided, violation of probation hearings were governed by N.J.S.A. 2A:168-4, which required only a "summary hearing," and by Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973), which held that the presence and participation of counsel was "constitutionally unnecessary in most revocation hearings." Gagnon required a case-by-case approach to the right-to-counsel question, holding that the right attached when dictated by "fundamental fairness." Id. The old probation statute was replaced by N.J.S.A. 2C:45-4, effective September 1, 1979, which required, among other things, the right to be represented by counsel. Devatt, while using the PTI-probation analogy, did not mention the statutory change. Wilson thought the Legislature's failure to provide additional due process rights in PTI termination proceedings at the time it provided them for probation revocation hearings indicated that it did not intend to expand due process rights available to PTI participants. The inference seems doubtful, especially since a change in PTI rules requires Supreme Court participation, N.J.S.A. 2C:43-14 to -20, making such a change more cumbersome. The better rule, if the revocation analogy is followed, is that the right to counsel should attach in PTI termination hearings.
*22 Wilson suggests that the liberty interests at stake in probation revocation hearings are more significant than those at stake in PTI termination hearings, so that due process rights required of the latter need not be as generous as those required of the former. 183 N.J. Super. at 95. This surely is debatable. As Wilson notes, the probationer, conditionally at liberty, may be sent to prison when probation conditions are violated. Conviction has already occurred. The PTI participant, on termination, has yet to be convicted and is not as close to prison as the probationer. That is about as far as the comparison can be carried. The PTI participant, if terminated, loses the very significant opportunity to erase criminal charges and must face the prospect of conviction and the heavy consequences of a criminal record. The probationer already has the conviction and the record. No proofs are available with which to measure the likelihood of prison for the probationer against the likelihood of prison for the PTI participant. There may be little difference. Arguably, the significance of a PTI termination is greater than that of a probation revocation. But that is not the test. "Fundamental fairness" is the measure dictated by Gagnon. It is the rule stressed by our courts when dealing with "summary hearings"  the kind of hearing employed in PTI termination proceedings. In State v. Zachowski, 53 N.J. Super. 431, 440 (App.Div. 1959), the court said: "The essential meaning of what is required by our statute to constitute an equivalent `summary hearing' must be derived from the concept of fair play  fair treatment of the defendant at this stage so he will not be made the victim of whim and caprice." These measures, applied to termination hearings, require the guarantee of counsel. The consequences of termination are so great that no other conclusion can be fair.
Even if a case-by-case approach is applied, the right to counsel would have constitutional protection in most PTI termination proceedings. The Gagnon court, after pointing to the impossibility of providing precise guidelines for right-to-counsel decisions, said:

*23 Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. [411 U.S. at 790-91, 93 S.Ct. at 1763-64].
PTI termination hearings always involve claims that the participant has violated the conditions of admission to the program and, when defended, invariably involve a denial of any violation or contentions that the violation was justified. The ability of the participant to present arguments is usually in question, especially when the participant is ignorant of the law. Few participants understand their constitutional rights; fewer know how to exercise them.
Wilson is the only reported case addressing the termination issues raised by the indictment of a PTI participant. No case has considered the issues raised by a participant's arrest. Lebbing, Devatt and Wilson all agree that PTI termination proceedings must adhere to due process. All three also permit the use of nebulous judicial termination standards. Devatt, the only decision binding upon this court, held that "proof need not be established to any particular degree." It is enough that the judge be satisfied "in the exercise of sound discretion" that termination is warranted. This was said to require "a conscientious judgment which takes into account the particular circumstances of the individuals." 173 N.J. Super. at 195. Thus, the rules for termination are nearly standardless and as difficult for a court to apply as many of the vague rules for PTI admission. State v. Ridgway, 208 N.J. Super. 118, 125 (Law Div. 1985).[1]
*24 It should be clear that "sound discretion" and "conscientious judgment" require a judge to observe the rules of law under which we live. One such rule, observed since the beginning of our system of constitutional law, is that a person accused of crime is innocent until proven guilty beyond a reasonable doubt. State v. Humphreys, Jr., 101 N.J. Super. 539, 544 (App. Div. 1968), aff'd in part, rev'd in part, 54 N.J. 406 (1969). An indictment is not proof that the person indicted committed the crime charged; it cannot be the proof of its own allegations. Trap Rock Industries v. Kohl, 59 N.J. 471, 487 (1971). An arrest has lesser implications. No statute, rule or guideline requires PTI termination by reason of an indictment or an arrest. Such a provision would raise clear constitutional questions. Any decision to terminate a PTI admission based solely upon the fact of indictment or arrest completely ignores the presumption of innocence that is a cornerstone of our criminal law.
The reverence for this presumption and its ancient origins are underlined in Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895):
The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.
....
Greenleaf traces this presumption to Deuteronomy, and quotes Mascardius De Probationibus to show that it was substantially embodied in the laws of Sparta and Athens. On Evidence, pt. 5, Sec. 29, note. Whether Greenleaf is correct or not in this view, there can be no question that the Roman law was pervaded with the results of this maxim of criminal administration....
....
Ammianus Marcellinus relates an anecdote of the Emperor Julian which illustrates the enforcement of this principle in the Roman law. Numerius, the governor of Narbonensis, was on trial before the emperor, and, contrary to the usage in criminal cases, the trial was public. Numerius contented himself with *25 denying his guilt, and there was not sufficient proof against him. His adversary, Delphidius, "a passionate man," seeing that the failure of the accusation was inevitable, could not restrain himself, and exclaimed, "Oh, illustrious Caesar! if it is sufficient to deny, what hereafter will become of the guilty?" to which Julian replied, "If it suffices to accuse, what will become of the innocent?" Rerum Gestarum, lib. 18, c. 1. [at 454-455, 15 S.Ct. at 403].
Wilson held that the introduction of the indictment into evidence coupled with the PTI counselor's testimony of the divertee's (participant's) progress in the program was enough for a decision to terminate. It required "an opportunity to explain the surrounding circumstances," at the divertee's option. Under this procedure the judge must ignore the presumption of innocence, shifting the burden of proof to the participant after the proof and only the proof of the indictment has been introduced. The participant, by testifying, runs the risk of self-incrimination as to the new criminal charge.
N.J.S.A. 2C:43-13f provides:
No statement or other disclosure by a participant undergoing supervisory treatment made or disclosed to the person designated to provide such supervisory treatment shall be disclosed, at any time, to the prosecutor in connection with the charge or charges against the participant, nor shall any such statement or disclosure be admitted as evidence in any civil or criminal proceeding against the participant. Nothing provided herein, however, shall prevent the person providing supervisory treatment from informing the prosecutor, or the court, upon request or otherwise as to whether or not the participant is satisfactorily responding to supervisory treatment.
R. 3:28(c)(5) is to the same effect. R. 3:28(c)(4), not incorporated in the PTI statute, provides:
During the conduct of hearings subsequent to an order returning the defendant to prosecution in the ordinary course, no program records, investigative reports, reports made for a court or prosecuting attorney, or statements made by the defendant to program staff shall be admissible in evidence against such defendant. No such hearing with respect to such defendant shall be conducted by the designated judge who issued the order returning the defendant to prosecution in the ordinary course.
These provisions do not prevent the use of a PTI participant's testimony in a termination hearing from prosecutorial use in a later criminal proceeding involving new charges. They provide confidentiality only with respect to "the charge or charges against the participant"  clearly those concerning *26 which PTI admission was granted. R. 3:28(c)(4), prevents the use of statements made to "program staff" in such later proceedings; it makes no reference to in-court testimony.
For these reasons, termination of the PTI programs of the within defendants cannot be predicated solely upon the fact of indictment or arrest. Any other conclusion would deny the presumption of innocence and threaten the deprivation of Fifth Amendment protection.
The PTI Director and the Prosecutor are unable or unwilling to try the new charges in the course of the PTI termination hearings. They suggest that the fact of indictment or arrest permits the court to toll the time the PTI participants' programs have to run until the new criminal charges are resolved through customary criminal proceedings. If convictions are obtained, PTI termination will be automatic; if convictions are not obtained, there will be no termination.
The suggestion cannot be followed. R. 3:28(b) and (c)(2) permit the postponement of charges for PTI purposes for two successive periods "not to exceed 6 months" each. R. 3:28(d) provides that when a second six month postponement has ended the PTI judge "may not again postpone proceedings" but must either dismiss the indictment or terminate the program. N.J.S.A. 2C:43-13c provides that supervisory treatment is "not to exceed 1 year." No tolling provision is included in either the rule or the statute. Furthermore, proof of an indictment or an arrest, without more, would not be enough to permit a tolling order. Acceptance of such proof, standing alone, would violate the presumption of innocence canon.
The Prosecutor is concerned that this ruling will permit what is referred to as a "free crime." That, of course, is not so. If it were, every defendant whose criminal charge is dismissed through PTI diversion could be said to have been given a "free crime." In the first place the guilt of such defendants has never been proved. In the second place, commission of the alleged new crime can be proved during the termination hearing. *27 A termination trial, with its vague standards of proof, is not nearly as onerous as a criminal trial where proof beyond a reasonable doubt is required.
Furthermore, the Prosecutor and the Director have bases for termination in two of the present cases without relying upon the proof of criminal charges. Christaldi has breached the PTI conditions to which he was subject by not reporting his new arrest to his counselor and, on two occasions, by failing to meet with his counselor as agreed. Gilmore, subject to the same conditions, did not report his arrest. These are significant violations. An arrest on a criminal charge is an important event, threatening termination of a PTI program. The PTI counselor is entitled to know about it so that termination proceedings can be instituted, when and if appropriate. Gilmore and Christaldi are not entitled to any further postponement of their criminal proceedings. Their PTI programs must be terminated.

Conclusion
The application to terminate Fenton's PTI program is denied. No violation of any PTI condition has been proved.
The application to terminate Christaldi's PTI program is granted, not because he was arrested, but because he failed to report to his counselor without providing a valid excuse and failed to report his new arrest.
The application to terminate Gilmore's participation in the PTI program is granted, not because he was arrested, but because he failed to report his new arrest.
The provision in the standard PTI conditions that a "re-arrest... is ground for being dropped by Pretrial" is not enforceable.
These conclusions represent the exercise of the "conscientious judgment" and "sound discretion" required of this court by Devatt. They disagree with Wilson.
NOTES
[1] The Appellate Division, in a recent decision, State v. Reyes, 207 N.J. Super. 126, 135-137 (App.Div. 1986), required proof by a preponderance of the evidence in a violation of probation hearing. It expressed doubt as to the constitutional validity of vague standards akin to those adopted in Lebbing, Devatt and Wilson. Perhaps this standard will be extended to PTI termination hearings.