**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 33935**

STATE OF IDAHO, )
)
    Plaintiff-Respondent, ) Boise, September 2007
)
v. ) 2007 Opinion No. 110
)
PAUL LAWRENCE ROGERS, ) Filed: October 22, 2007
)
    Defendant-Appellant. ) Stephen W. Kenyon, Clerk
)
_____ )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Honorable Ronald J. Wilper. District Judge.

Appeal from drug court termination and sentencing, <u>vacated and remanded.</u>

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Eric R. Lehtinen, Deputy Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General argued.

_____

BURDICK, Justice

    Paul L. Rogers appeals his termination from the Ada County Drug Court Program and his subsequent sentencing for possession of a controlled substance. Rogers alleges that he was terminated from the drug court program without due process of law in violation of the Fourteenth Amendment. We vacate Roger's conviction and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    On February 24, 2003, Rogers was charged with possession of methamphetamine and driving without privileges. Rogers reached a plea agreement with the State, wherein the State agreed to drop the charge of driving without privileges and charges for burglary and attempted grand theft in an unrelated case, in return for Rogers pleading guilty to the possession charge. The State additionally agreed to dismiss the case altogether if Rogers successfully completed the Ada County Drug Court Program (ACDCP). [1] Pursuant to the plea agreement Rogers pleaded

---

[1] The Court of Appeals aptly summarized Idaho's drug courts:

guilty to possession of methamphetamine and entered into a Phase I contract for drug court on February 11, 2004. The district court judge, the Honorable Michael McLaughlin, then transferred jurisdiction over Rogers to the drug court.

During Rogers's participation in ACDCP he violated various ACDCP rules and was sanctioned twice. After these initial violations of the drug court program's rules Rogers seemed to improve markedly and even earned praise for his performance from the drug court judge on May 12, 2004, and May 26, 2004. However, on June 30, 2004, the drug court judge, the Honorable Ronald Wilper, confronted Rogers with information suggesting Rogers had been attempting to solicit fellow drug court participants to enter into a prostitution ring or "adult entertainment business."

At a hearing on July 14, 2004, Judge Wilper terminated Rogers from the drug court program. Then, on September 30, 2004, after conducting the sentencing hearing, Judge Wilper imposed a unified sentence of five years, with one year fixed, and retained jurisdiction for 180 days.

---

As a preliminary matter, a short discussion of Idaho's drug court program is warranted. The introduction of the problem-solving approach in the courts has given rise to innovative diversion efforts such as drug court programs. In 2001, the Idaho legislature enacted the Idaho Drug Court Act, by 2005 amendment now known as the Idaho Drug Court and Mental Health Court Act (the "Act"). I.C. §§ 19-5601, *et seq.* The Act provides, *inter alia,* that the district court in each Idaho county may establish a drug court. I.C. § 19-5603. With the exception of eligibility standards, *see* I.C. § 19-5604, the Act itself provides no guidance on the inner workings or procedures to be followed by a drug court. Instead, the Act authorized the Idaho Supreme Court to establish a Drug Court and Mental Health Court Coordinating Committee and vested it with responsibility for establishing standards and guidelines and providing ongoing oversight of the operation of drug courts. I.C. § 19-5606. Effective September 26, 2003, the Committee has adopted guidelines for adult drug courts. *See* Idaho Adult Drug Court Guidelines for Effectiveness and Evaluation. These guidelines do not specify exactly how a drug court program must be run and, as specifically stated therein, the guidelines "are not rules of procedure and have no effect of law." In addition, effective August 15, 2005, the Idaho Supreme Court adopted an administrative rule to provide additional direction for the development, establishment, operations, and termination of drug courts and mental health courts. *See* Idaho Court Administrative Rule 55. As relevant to the instant appeal, the rule addresses primarily how a drug court is created and it does not mandate that a drug court program must be operated in any particular way.

As of January 2006, Idaho had forty-four drug courts in operation spread out over approximately twenty-three counties and at differing levels of the judicial system within some counties. From the above discussion, it must be assumed that each drug court in Idaho operates uniquely and, therefore, the analysis in this case might not be applicable to any other particular drug court program in the state.

*State v. Rogers*, 2006 WL 2422648, at *3-4 (Ct. App. Aug. 22, 2006) (footnotes omitted).

Rogers appealed, contending that Judge Wilper denied him the due process he was entitled to under the Fourteenth Amendment of the United States Constitution when he terminated Rogers from the drug court program and that the drug court's factual findings were clearly erroneous. The Court of Appeals affirmed. *State v. Rogers*, 2006 WL 2422648 (Ct. App. Aug. 22, 2006). We granted Rogers's petition for review.[2]

## II. STANDARD OF REVIEW

"When considering a case on review from the Court of Appeals, this Court gives serious consideration of the views of the Court of Appeals; however, this Court reviews the trial court's decisions directly." *State v. Coassolo*, 136 Idaho 138, 140, 30 P.3d 293, 295 (2001) (citations omitted).

"This Court exercises free review over constitutional questions." *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003).

The trial court's factual findings will not be overturned unless they are clearly erroneous. *State v. Conant*, 143 Idaho 797, __, 153 P.3d 477, 479 (2007).

## III. ANALYSIS

Rogers raises two issues on appeal. First, is a defendant who pleads guilty in return for admission into a diversionary program entitled to due process of law when the State seeks to terminate him from that program, and if so, what process is due? Second, was there substantial and competent evidence to support the drug court judge's decision to terminate Rogers from the drug court program? We begin our analysis with Rogers's due process claim.

Rogers pleaded guilty as a condition to enter the program and thus waived his right to assert his innocence in front of a jury. He also signed the Drug Court Guilty Plea form which reads, "[i]n order to accept the option to participate in drug court, you must plead guilty to the charge in the Information." Rogers argues, therefore, that he has a protected liberty interest in remaining in the ACDCP and that he was terminated from the program in violation of due process as established under the Fourteenth Amendment. Conversely, the State argues that Rogers does not have a protected liberty interest in ACDCP participation.

It is fundamental to our legal system that the State shall not deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Determining

---

[2] By the time of oral argument in this matter, Rogers had served his fixed sentence and was serving the remainder of his sentence on parole. However, he still faces consequences without this appeal.

procedural due process rights involves a two-step analysis: first, determining whether a governmental decision would deprive an individual of a liberty or property interest within the meaning of the Fourteenth Amendment's Due Process Clause; and second, if a liberty or property interest is implicated applying a balancing test to determine what process is due. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Schevers v. State*, 129 Idaho 573, 575, 930 P.2d 603, 605 (1996). We first examine whether a diversionary program participant in Rogers's position has a liberty interest under the Fourteenth Amendment and then proceed to examine what process is required before a diversionary program participant can be terminated from that program.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews,* 424 U.S. at 332. The United States Supreme Court has recognized that parolees have a liberty interest under the Fifth and Fourteenth Amendments and cannot be terminated from parole without due process of law. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Probationers hold the same liberty interest; in terms of due process the liberty interest at stake in probation is indistinguishable from the liberty interest at stake in parole. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). The United States Supreme Court has not spoken as to the due process rights of diversionary program participants, and this is the first time this Court has confronted the issue of whether procedural due process applies to diversionary program participants.

To support its contention that Rogers had no liberty interest, the State points to several decisions from jurisdictions where courts have found that participants of some diversionary programs are not entitled to procedural due process when being terminated from those programs. However, those cases involved diversionary programs that differ from ACDCP in one key respect: defendants were placed into the diversionary program *prior to* entering a plea. *See Wood v. U.S.,* 622 A.2d 67, 72 (D.C. Cir. 1993); *Deurloo v. State*, 690 N.E.2d 1210, 1212-13 (Ind. Ct. App. 1998). Far from disputing Rogers's claim that his guilty plea created a liberty interest in remaining in ACDCP, these cases actually follow the same reasoning: where a defendant enters a diversionary program prior to entering a plea he maintains his right to assert his innocence and has no liberty interest at stake as expulsion from the program will leave him in the exact same position as he was before entering it. However, when a defendant pleads guilty in

order to enter a diversionary program he has a liberty interest at stake as he will no longer be able to assert his innocence if expelled from the program. [3]

Most states that have examined procedural due process in the context of a diversionary program have held that a defendant who pleads guilty in exchange for entrance into the diversionary program has a liberty interest in remaining in that program (and is therefore entitled to procedural due process before he may be terminated from that program). *See People v. Bishop*, 7 P.3d 184, 188 (Colo. Ct. App. 1999); *Simmons v. State*, 2001 WL 175677 (Del. Feb. 2, 2001); *Hopper v. State*, 546 N.E.2d 106, 109 (Ind. Ct. App. 1989); *State v. Stafford*, 2001 WL 950692 (Ohio Ct. App. Aug. 16, 2001); *Hagar v. State*, 990 P.2d 894, 899 (Okla. Crim. App. 1999). Other courts have gone so far as to find that diversionary program participants who entered a diversionary program *prior to* pleading to an offense are entitled to the same due process as probationers or parolees. *See State v. Cassill-Skilton,* 94 P.3d 407, 409 (Wash. Ct. App. 2004); *State v. Lebbing*, 385 A.2d 938, 941 (N.J. Super. Ct. Law Div. 1981); *State v. Devatt,* 413 A.2d 973, 975 (N.J. Super. Ct. Law Div. 1980). [4]

Furthermore, we have held being denied a liberty one enjoys and being deprived of a liberty one desires are two very different things for purposes of due process analysis; one is a cognizable liberty interest and the other is not. *Coassolo*, 136 Idaho at 142, 30 P.3d at 297 ("There is a crucial distinction between being deprived of a liberty one has, as in parole, and

---

[3] At Rogers's sentencing hearing the district court judge stated:

> I want to give the defendant an opportunity to speak and be heard and – however, as a general rule, as a general rule, [sic] I don't allow an evidentiary hearing on that issue.
>
> This is for several reasons. *The statute of the Idaho Drug Court Act specifies and sets forth that nobody is entitled to be in drug court, and the court makes these determinations about whether or not to expel somebody from the drug court program on an ad hoc basis*, on a case-by-case basis based on the facts that are in front of the court at the time. (Emphasis added)

To the extent the court was implying that because participation in the program is a gift from the State and not an entitlement, the State has the authority to determine what process program participants are entitled to, it was at odds with *Morrissey*, which held "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a right or as a privilege." 408 U.S. at 481 (quoting *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (internal quotations omitted)). Therefore, the fact that no one is entitled to participate in the drug court program is irrelevant; the Constitution ensures that once a liberty interest is created due process must be provided when the State seeks to terminate that liberty interest.

[4] Interestingly, although this factual distinction is key, some courts have held that procedural due process rights do apply to some degree even when a defendant is terminated from a diversionary program *prior to* entering a plea. *See State v. Wilson* 443 A.2d 252 (N.J. Super. Ct. Law Div. 1981) (unclear whether a plea was entered); *State v. Lebbing*, 385 A.2d 938, 941 (N.J. Super. Ct. Law Div. 1978); *State v. Devatt*, 413 A.2d 973 (N.J. Super. Ct. App. Div. 1980); *State v. Cassill-Skilton*, 94 P.3d 407 (Wash. Ct. App. 2004); *State v. Valentine*, 2000 WL 628996 (Wash. Ct. App. May 15, 2000).

being denied a conditional liberty that one desires."). Here, Rogers was deprived of a liberty that he currently held, not one that he merely desired. Prior to termination from ACDCP he was living in society (subject to the restrictions of complying with the drug court program), and after his termination from ACDCP he was incarcerated. Rogers pleaded guilty in order to participate in ACDCP and his termination from ACDCP resulted in his being criminally sentenced and having a felony conviction appear on his record. Therefore, we hold Rogers had a liberty interest in remaining in the ACDCP.

Since we have established that Rogers has a liberty interest at stake, we must determine what process is due to protect that interest. *Mathews*, 424 U.S. at 334-35. This inquiry is guided by three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Since the liberty interest involved is akin to that in probation and parole revocation hearings, this inquiry is also informed by the United States Supreme Court's decisions requiring procedural safeguards in parole and probation revocation proceedings. In the seminal case of *Morrissey*, the United States Supreme Court addressed the process due when the government seeks to terminate a parolee from parole. There, the Court noted due process included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

6

408 U.S. at 489. The Court later held that the state must provide the same process when terminating a probationer from probation.[5] *Gagnon*, 411 U.S. at 786.

We hold, therefore, that Rogers was entitled to the restricted due process protections as articulated in *Morrissey.* However, we also caution that this process is to be flexible, does not need to be equated to a separate criminal prosecution and may be informal, on the condition that the safeguards are provided. The drug court judge may preside over the termination proceedings. Additionally, the neutral court may consider evidence which might not necessarily be admissible in a criminal trial, if such evidence is disclosed to Rogers prior to the hearing, is reliable and would assist the court in making its determination.[6] Finally, after the termination hearing if Rogers is terminated, the drug court judge may serve as the sentencing judge, since information from the termination proceedings would be admissible in a sentencing hearing.

We understand that similar to the ACDCP, many diversionary programs are informal in nature, and we do not want to unnecessarily impede the functioning of diversionary programs. The principles articulated in this opinion apply only when a participant in a diversionary program is facing termination from the program because that is when the participant faces a loss of liberty. Intermediate sanctions imposed in these programs do not implicate the same due process concerns, and continued use of informal hearings and sanctions need not meet the procedural requirements articulated here.

Here, the district court did not afford Rogers all process due. Therefore, we vacate Rogers's conviction and remand for further proceedings. Because we vacate Rogers's conviction on due process grounds, we need not reach his evidentiary arguments.

## IV. CONCLUSION

We hold that because Rogers was required to plead guilty in order to enter ACDCP he had a liberty interest in remaining in that diversionary program. We also hold that Rogers was entitled to the due process rights announced in *Morrissey* prior to his termination from ACDCP.

---

[5] Additionally, most courts in other jurisdictions have concluded that these same procedural safeguards apply to diversionary program participants who have pleaded guilty prior to entering a diversionary program. *See, e.g., Hopper* 546 N.E.2d at 109; *Stafford*, 2001 WL 950692 at *2. The lone exception was a New Jersey case, *State v. Wilson*, 443 A.2d 252 (N.J. Super. Ct. Law Div. 1981), where the court found that less due process was required. However, not only is it unclear from that opinion whether *Wilson* had pleaded guilty prior to entering the program, other New Jersey cases that have examined this issue have rejected the *Wilson* court's reasoning. *See State v. Fenton*, 533 A.2d 405, 408-09 (N.J. Super. Ct. Law Div. 1987); *see also Lebbing,* 385 A.2d at 941; *Devatt,* 413 A.2d at 975.

[6] Of course, these rights may be waived, but there is no showing that Rogers knowingly waived his due process rights.

7

Because Rogers did not receive the process due prior to his termination from ACDCP, we vacate his conviction and remand for further proceedings in accordance with the principles announced in this opinion.

Justices J. JONES, W. JONES, and JUSTICES PRO TEM TROUT and KIDWELL, **CONCUR.**