909 P.2d 619

STATE of Idaho, Plaintiff–Respondent,

v.

Gary W. GALLIPEAU, Defendant–Appellant (Two Cases).

Gary W. GALLIPEAU, Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

Nos. 20019, 20228 and 20622.

Court of Appeals of Idaho.

Sept. 30, 1994.

Petition for Review Denied Dec. 22, 1994.

2

Gary W. Gallipeau, pro se appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., and Robert R. Gates, Legal Services Div., Boise, for respondent.

LANSING, Judge.

This is a consolidation of three appeals. Gary W. Gallipeau appeals from an order revoking probation and executing a suspended sentence for grand theft (docket number 20228), a judgment of conviction for fraudulent use of a financial transaction card (docket number 20019), and an order denying a petition for a writ of habeas corpus (docket number 20622). We find no error in the actions of the trial courts and, therefore, affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In 1987 defendant Gary Gallipeau pleaded guilty to a charge in Nez Perce County for grand theft, I.C. § 18–2403(1) and § 18–2407(1). The sentencing court withheld judgment pursuant to I.C. § 19–2601(3) and placed Gallipeau on five years' probation with one year to be served in the county jail. On February 27, 1991, after finding that Gallipeau had violated probation, the court entered a judgment of conviction and imposed a sentence of two to seven years' confinement. The court retained jurisdiction for 180 days and thereafter suspended the sentence, once again placing Gallipeau on probation, this time for seven years.

In April 1992, another criminal complaint was filed in Nez Perce County charging Gallipeau with two counts of grand theft, I.C. § 18–2403(1) and § 18–2407(1)(b)(3), and with two counts of fraudulent use of a financial transaction card, I.C. § 18–3124. Gallipeau pleaded guilty to one count of fraudulent use of a financial transaction card, and the other charges were dismissed. On April 22, 1992, Gallipeau was sentenced to a term of seven years with two years determinate. The court also revoked probation in the 1987 grand theft case and ordered execution of the previously suspended sentence.

On September 11, 1992, Gallipeau filed a motion pursuant to I.C.R. 35 to correct an illegal sentence on the conviction for fraudulent use of a financial transaction card. Gallipeau pointed out that the maximum sentence available for a felony violation of I.C. § 18–3124 was five years. I.C. § 18–3127. The district court corrected the sentence to require that Gallipeau serve a minimum of two years followed by an indeterminate term of three years.

Gallipeau filed timely notices of appeal from both the judgment of conviction for fraudulent use of a financial transaction card and the order revoking his probation on the grand theft conviction.

Unfortunately, difficulties arose in obtaining the transcripts that Gallipeau requested for the appeals, which included transcripts of hearings dating back to 1986 in the grand theft case. Although the transcripts were due under I.A.R. 24(d) on approximately July 30, 1992, they were not filed until April 8, 1993 and July 2, 1993. Based upon this delinquency in the court reporters' preparation of the transcripts, Gallipeau filed in the magistrate division of the district court in Ada County a pro se petition for a writ of habeas corpus, Docket No. 20622. In that petition he requested that the criminal convictions be vacated and that he be released from prison.

The petition was denied on the ground that it failed to present a claim upon which the extraordinary relief of habeas corpus may be granted. Gallipeau's appeal from that order was consolidated with his appeals in the criminal cases.

## II.

### HABEAS CORPUS APPEAL

■ We will first address Gallipeau's petition for habeas corpus because, if he is entitled to the relief sought in his petition, his other appeals may become moot.

Gallipeau asserts that he is entitled to unconditional release from prison due to the State's dereliction in preparing the transcripts for appeal. He relies upon cases from West Virginia holding that a convicted defendant who is deprived of an expeditious appeal by "extraordinary dereliction" in the preparation of transcripts is entitled to release from custody. *See State v. Warden, Huttonsville Corrections Center,* 169 W.Va. 421, 288 S.E.2d 176 (1982); *Johnson v. McKenzie,* 160 W.Va. 385, 235 S.E.2d 138 (1977); *Rhodes v. Leverette,* 160 W.Va. 781, 239 S.E.2d 136 (1977); *State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 226 S.E.2d 721 (1976).

■ Gallipeau's claim for relief in his petition for a writ of habeas corpus presents an issue of first impression in this State. However, a number of jurisdictions have held that inordinate delay in processing a criminal appeal may constitute a deprivation of due process. *United States v. Kimmons,* 917 F.2d 1011, 1014 (7th Cir.1990); *United States v. Antoine,* 906 F.2d 1379, 1382 (9th Cir.1990), cert. denied 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990); *Rheuark v. Shaw,* 628 F.2d 297, 302–03 (5th Cir.1980), cert. denied 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981); *United States v. Johnson,* 732 F.2d 379, 381 (4th Cir.1984), cert. denied 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984); *United States v. Pratt,* 645 F.2d 89 (1st Cir.1981); *State v. Pennington,* 179 W.Va. 139, 365 S.E.2d 803 (1987); *Graham v. State,* 171 Ga.App. 242, 319 S.E.2d 484, 493 (1984); *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983). We agree that an extreme delay of the appellate process may, in some circumstances, rise to the level of a due process violation.

In evaluating whether a deprivation of due process has resulted from the delay of an appeal, most courts have chosen one of two distinct analytical approaches. The first group, represented by *Antoine, Rheuark, Johnson,* and *Graham,* have employed the four-factor balancing test announced in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), for assessment of speedy trial violations. This test requires consideration of (1) the length of the delay, (2) the reason for delay, (3) whether the defendant demanded a more rapidly scheduled trial, and (4) the prejudice to the defendant caused by the delay. *Id.*

The other group, which includes *Chapple* and *United States v. Alston,* 412 A.2d 351, 358–59 (D.C.1980), focus upon prejudice to the defendant's ability to adequately defend himself if the appeal were to result in a new trial. These decisions reject the *Barker* analysis because, they postulate, the interests guarded by the constitutional right to a speedy trial differ from those at stake during an appeal:

[The defendant's conviction] can be said, in fairness, to rebut the presumption of innocence which underlies the right to bail, and implicitly, underlies the right to a speedy trial. Thus, in a fundamental sense—absent pretrial delay—the conviction and sentencing have satisfied the interests of

the defendant, as well as the public, in a speedy trial, and the burden of persuasion on appeal has shifted from the state to the defendant. The variety of concerns of a defendant who has been accused but never brought to trial has been dispelled in the case of defendant who had the opportunity to stand trial. Thus, judicial consideration of the appeal period does not require the kind of emphasis on delay as such that the Sixth Amendment imposes on the period between arrest and trial. It follows that, once again, there is one, predominant concern when a defendant faces appellate delay: prejudice to the ability to defend against the charge in the event of a second trial.

*Alston*, 412 A.2d at 358–59; *State v. Chapple*, 660 P.2d at 1226.

█ It appears that under either of these approaches some showing of prejudice is necessary in order to establish a deprivation of due process. The court in *Antoine*, after adopting the four-part *Barker v. Wingo* test, went on to opine that "a due process violation cannot be established absent a showing of prejudice to the appellant." *Antoine*, 906 F.2d at 1382. *See also United States v. Kimmons*, 917 F.2d 1011, 1014–15 (because there was no prejudice from the delay in preparation of the transcript, the court found it unnecessary to apply the other *Barker* factors). Prejudice may exist if the appellant has been impaired in his or her ability to present the appeal, to obtain meaningful relief through the appeal, or to defend in the event that the case is remanded for a new trial or other proceedings.

We conclude that it is unnecessary to adopt either the *Barker v. Wingo* analysis or the *Alston* approach in order to evaluate Gallipeau's claim, for the absence of prejudice in this case precludes relief under either formulation. Gallipeau has not alleged that the delay in preparation of the transcripts was prejudicial. He does not assert, and we do not perceive, that this delay hindered Gallipeau's ability to address issues that were or could have been raised on the appeals, that it would impede the effectiveness of any relief that might be granted on these appeals, or that it would disadvantage Gallipeau in the event of proceedings on remand.

Accordingly, we hold that the magistrate in Ada County properly denied Gallipeau's petition for a writ of habeas corpus.

## III.

## APPEAL OF CONVICTION AND REVOCATION OF PROBATION

We turn now to the merits of Gallipeau's appeals from the revocation of probation in the 1987 case and the judgment of conviction in the 1992 case.

With respect to the 1987 case he asserts that the court lacked jurisdiction to extend or revoke probation. With respect to the 1992 case he contends that:

1) the sentence was illegal;

2) the district court allowed testimony from Gallipeau's psychological counselor without first conducting a hearing to determine if Gallipeau had waived the psychotherapist-patient privilege;

3) the court erroneously considered an eighteen-year-old conviction in sentencing Gallipeau;

4) the court erroneously admitted lay testimony at sentencing regarding his future criminal propensity;

5) the prosecutor made prejudicial remarks at sentencing and referred to facts not in the record;

6) there was insufficient evidence to support his conviction;

7) a supplemental presentence investigation ordered by the court was improperly prepared; and,

8) Gallipeau's confession was obtained in violation of his Fourteenth Amendment rights.

## A. PROBATION ISSUES

█ We will address first Gallipeau's assertion that the district court did not have jurisdiction to lengthen or revoke his probation in the 1987 case. Gallipeau suggests that when the court revoked probation in 1992, he had already fulfilled the conditions

of probation imposed in 1987 that he pay restitution, fines and court costs. Therefore, he contends, his probation had been concluded before the court revoked probation. This argument is without merit. The length of a term of probation is that established by order of the court pursuant to I.C. § 20–222. A probationary period does not end merely because the financial obligations which are made conditions of the probation have been satisfied.

■ Gallipeau also contends the district court was without authority to lengthen the probationary period when it placed him on probation for the second time in 1991 after a period of retained jurisdiction. Again, the contention is spurious. Gallipeau was given a withheld judgment in 1987. In 1991, Gallipeau was convicted and actually sentenced for the 1987 offense. At that point the court could lawfully impose any sentence that could have been ordered originally. I.C. §§ 19–2603, 20–222; *State v. Pedraza,* 101 Idaho 440, 614 P.2d 980 (1980). The court also had authority to retain jurisdiction and thereafter grant Gallipeau a new probationary period. I.C. § 19–2601. Moreover, a court may at any time extend a period of probation so long as the probationary period does not exceed the maximum period for which the defendant might have been imprisoned. I.C. § 20–222.

Accordingly, in 1992 when Gallipeau violated the terms and conditions imposed by the latest order of probation, the court could lawfully revoke probation and order Gallipeau to serve the previously suspended sentence imposed in 1991 for the 1987 grand theft conviction.

## B. LEGALITY OF SENTENCE

■ Gallipeau next argues that the court informed him of an incorrect maximum penalty and imposed an illegal sentence in his 1992 case. This claim of error is without merit. Gallipeau obtained redress for the illegal sentence through a Rule 35 motion and received the appropriate relief. The issue of the illegal sentence is, therefore, moot.

## C. COUNSELOR'S TESTIMONY

■ Gallipeau also contends the district court erred by admitting testimony from his counselor without first conducting a hearing to determine if Gallipeau had waived his psychotherapist-patient privilege under I.R.E. 503. The counselor was called at the sentencing hearing by the State to clarify statements she had made to the presentence investigator. At the hearing, the counselor indicated some concern regarding whether she could, in compliance with I.R.E. 503, disclose these matters in court. The counselor stated however, that Gallipeau had given her permission to talk to the presentence investigator regarding the same matters. The district court then determined that the State could continue questioning the witness. Thereafter, the State asked the counselor about statements she had made to the presentence investigator and statements made by Gallipeau to the presentence investigator. At no time did Gallipeau or his counsel object to this line of questioning or assert his privilege.

From the record it appears that Gallipeau gave the counselor permission to discuss his therapy and progress with the presentence investigator. By that consent, as well as his lack of objection to the counselor's testimony, Gallipeau waived the privilege and cannot now assert error in the admission of this evidence. I.R.E. 510.

## D. EVIDENCE OF PRIOR CONVICTION

■ Next, Gallipeau asserts the court erroneously relied upon an eighteen-year-old conviction at sentencing in contravention of I.R.E. 609, which governs use of prior convictions to impeach a witness. Gallipeau is mistaken. Except for the rules governing privileges, I.R.E. 501–520, the Idaho Rules of Evidence do not apply at sentencing hearings. I.R.E. 101(e)(3). Therefore, Rule 609 was inapplicable. Moreover, the evidence of Gallipeau's prior conviction was not offered for impeachment but for its relevance to determination of an appropriate sentence. The court is free under I.C. § 19–2521 to consider a broad range of information on sentencing, and the scope of its inquiry is largely unlimited as to either the type or the source of information. *State v. Bivens,* 119 Idaho 119, 803 P.2d 1025 (Ct.App.1991); *State v. Turner,* 105 Idaho 748, 672 P.2d 1078

(Ct.App.1983). Therefore, Gallipeau's prior criminal record was relevant and admissible.

### E. SUFFICIENCY OF EVIDENCE AND LAWFULNESS OF CONFESSION

 Gallipeau next asserts that there was insufficient evidence to support his conviction on the 1992 charge and that his confession was obtained in violation of his rights under the Fourteenth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These two issues could have been asserted below if Gallipeau had elected to contest the charge rather than to plead guilty. Where a defendant pleads guilty, however, he admits the crime and waives his right to require the State to prove the charges at trial. *Clark v. State*, 92 Idaho 827, 832–33, 452 P.2d 54, 59–60 (1969). By obviating the State's burden to prove the charge, a guilty plea waives any issue as to the admissibility of evidence upon which the State might have relied. *Stone v. State*, 108 Idaho 822, 826, 702 P.2d 860, 864 (Ct.App. 1985); *State v. Mallery*, 105 Idaho 352, 670 P.2d 57 (Ct.App.1983). Therefore, these issues which Gallipeau attempts to raise on appeal have been waived.

### F. ISSUES NOT PRESERVED FOR APPEAL

 The final three issues can be addressed together. With regard to Gallipeau's assertions that the court erred in taking lay testimony about his future criminal propensity, that the prosecutor made prejudicial remarks at sentencing and referred to facts not in the record, and that the supplemental presentence investigation was improperly prepared, Gallipeau failed to raise objections before the district court. Where an objection is not preserved below it may not be raised on appeal unless it asserts fundamental error. *Masters v. State*, 105 Idaho 197, 668 P.2d 73 (1983); *State v. Sharp*, 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). Fundamental error has been defined as follows:

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the

defendant a right which was essential to his defense and which no court could or ought to permit him to waive.

*State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). *See also State v. Haggard*, 94 Idaho 249, 486 P.2d 260, 262 (1971). We have reviewed the errors asserted by Gallipeau and find that they do not rise to the level of fundamental error. Therefore, we will not address them on appeal.

### IV.

### CONCLUSION

Neither Gallipeau's appeal from the denial of his habeas corpus petition nor his appeals in the underlying criminal actions have merit. The denial of the petition for a writ of habeas corpus, the judgment of conviction for fraudulent use of a financial transaction card and the order revoking probation following the conviction for grand theft are affirmed.

WALTERS, C.J., and PERRY, J., concur.