80 P.3d 345

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Derek CANTRELL, Defendant–Appellant.**

No. 28655.

Court of Appeals of Idaho.

Nov. 12, 2003.

Hollifield and Bevan, Twin Falls, for appellant. William R. Hollifield argued.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

WALTERS, Judge Pro Tem.

Derek Cantrell appeals from the order of the district court reversing the magistrate court's decision suppressing the results of Cantrell's blood alcohol concentration tests. He contends that his due process rights were violated by a delay in releasing him on bail, which resulted in his inability to obtain exculpatory evidence through independent blood alcohol concentration testing. We agree with the district court's determination and hold that the magistrate erred by suppressing the evidence.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Cantrell was arrested at approximately 3:30 p.m. on suspicion of driving under the influence of alcohol. Before being transported to the jail, Cantrell asked his son, who was present at the time of the arrest, to make arrangements to bail him out of jail. After arriving at the jail, the arresting officer read the standard police advisory form to Cantrell, informing Cantrell, among other things, that he had a right to obtain independent testing of his blood alcohol concentration (BAC). After indicating that he understood his rights, Cantrell willingly submitted to two breath tests at approximately 4:25 and 4:26 p.m. to determine his BAC. Afterwards, the officer offered Cantrell a phone call, which Cantrell refused. Cantrell was then placed in a holding cell. At approximately 5:00 p.m., Cantrell's son arrived at the jail with a bail bondsman to post bail. However, Cantrell did not bond out of jail until between 8:15 and 8:30 p.m. No explanation has been given for the delay in releasing Cantrell.

Cantrell was charged with driving under the influence, Idaho Code § 18-8004(1)(a). Prior to trial, Cantrell filed a motion to dismiss or suppress arguing that the three-hour delay in releasing him from the jail violated his due process rights because it prevented him from obtaining independent BAC testing. Agreeing with Cantrell, the magistrate ordered suppression of the breath test results for violation of Cantrell's due process rights. The state appealed the magistrate's decision to the district court. The district court reversed the order of the magistrate and held that there was no violation of Cantrell's due process rights because Cantrell did not request independent testing or request access to a telephone. Cantrell now appeals the order of the district court reversing the magistrate's order suppressing the breath tests.

## II.

### ANALYSIS

When this Court reviews an appellate decision of a district court, we examine the trial

court record "independently of, but with due regard for, the district court's intermediate appellate decision." *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App. 1993). In reviewing an order granting or denying a motion to suppress evidence, we defer to the factual findings of the trial court unless those findings are clearly erroneous. However, free review is exercised over the trial court's determination as to whether, based on those factual findings, constitutional requirements have been met. *State v. Medley*, 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995); *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

Cantrell contends that the district court erred in reversing the magistrate's order suppressing the results of the BAC tests. He argues that due process guarantees a defendant the right to a reasonable opportunity to obtain exculpatory evidence. Relying upon this right, Cantrell argues that the delay in releasing him from jail violated his right to due process by depriving him of the opportunity to gather exculpatory evidence by obtaining independent BAC testing. The state contends that there was no due process violation because Cantrell never triggered the right to obtain independent testing by either requesting an independent test or by requesting a phone call.

Under I.C. § 18–8002(4)(d), a driver, after submitting to evidentiary testing at the request of a peace officer, may have additional testing done by a person of his or her own choosing. This testing is available only when practicable and must be paid for at the driver's own expense. I.C. § 18–8002(4)(d). When a DUI detainee is denied additional testing by peace officers, the results of the evidentiary testing done by the state are inadmissible. *Id.* The appellate courts of this state have recognized that there is an "inherent exigency" in a DUI setting due to the destruction of the evidence by the metabolism of alcohol in the blood. *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989); *State v. Madden*, 127 Idaho 894, 896, 908 P.2d 587, 589 (Ct.App.1995). Therefore, a detainee's opportunity to gather exculpatory evidence in such cases lasts only a short time following the arrest and administration

of the state's testing. *State v. Carr*, 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct.App. 1995). In *Carr*, this Court noted that a detainee may gather exculpatory evidence in several ways other than submitting to another BAC test, including the taking of photographs to demonstrate that the detainee's eyes were not bloodshot but were clear and white; preparation of a tape recording to demonstrate that the detainee had clear speech; videotaping the detainee to show that he has balance and is able to walk in a straight line; performance of a gaze nystagmus test to show smooth eye pursuit at all angles; and eyewitness observation by a non-law enforcement person who observes the various characteristics of sobriety aforementioned.

Section 18–8002(4)(d) provides that a detainee's inability to obtain additional testing will not result in the suppression of the tests completed by the state unless the additional testing was denied by the police officers. In *Madden*, this Court held that denying the defendant's requests to obtain an independent blood test and to telephone her attorney until several hours following the state's BAC test was a violation of the statute, permitting suppression of the BAC test results. In *Carr*, we held that a several-hour delay in granting a defendant's request to speak to her attorney was a deprivation of due process because it prevented her from preserving evidence concerning her level of sobriety. In *State v. Shelton*, 129 Idaho 877, 880, 934 P.2d 943, 946 (Ct.App.1997), by contrast, the defendant was advised of his right to obtain an additional BAC test at his own expense, but he never informed the police that he wanted to assert his right to such a test. This Court held that because Shelton failed to exercise his right to an independent BAC test, the state did not violate the statute and its BAC test results were not to be suppressed. Accordingly, a peace officer is not required to inquire of the detainee's desire to obtain additional testing, but if the detainee affirmatively asserts the right, the state may not interfere with or deny the detainee the opportunity to make arrangements for such testing.

In the instant case, as in *Shelton*, Cantrell never requested independent testing, nor did he seek to use the telephone to arrange for independent testing. He asserts, however, that the presence of his son and the bail bondsman was a sufficient exercise of his right to gather exculpatory evidence. Cantrell's premise is that the state's BAC evidence should be suppressed whenever the state interferes with a third party's attempt to bond a DUI suspect out of jail. Even if we accept that premise, the affidavits Cantrell presented in support of his suppression motion are simply insufficient to show that circumstance occurred here. His evidence shows only that his son and a bail bondsman arrived at the jail approximately three and one-half hours before Cantrell was released. The affidavits do not disclose anything that happened during those three and one-half hours. Specifically, they do not say that Cantrell's son and the bondsman, upon their arrival, immediately contacted jail personnel and requested Cantrell's release. The mere presence of a person at the jail to effectuate a detainee's release is not sufficient to inform the jail personnel of the detainee's desire to seek an additional BAC test under I.C. § 18–8002(4)(d) or to otherwise preserve exculpatory evidence. Cantrell has provided no evidence to show that the delay in releasing him from jail was in fact caused by the state. The detainee must show that there was some delay, caused by the state, which hindered the gathering of exculpatory evidence. In sum, Cantrell needed to make some showing that his son and the bondsman were actively attempting to bail him out of jail and that the police were in some way interfering with or preventing his release. Therefore, there was no denial of alternative testing by the police officers, and the state's BAC was not subject to suppression.

## III.

## CONCLUSION

Cantrell has not shown that his right to gather exculpatory evidence was violated as a result of the delay in his release from jail. Therefore, the results of the state's BAC test should not have been suppressed. Accordingly, the magistrate's order suppressing the state's test results is reversed. The case is remanded for further proceedings.

Chief Judge LANSING concurs.

Judge GUTIERREZ, dissenting.

I am constrained to dissent from the majority opinion because I agree with the order of the magistrate which held that the unreasonable delay in releasing Cantrell, who had been booked in on a first time DUI, violated Cantrell's due process rights by denying him the opportunity to gather exculpatory evidence. The magistrate's decision was based on Cantrell's exercise of his constitutional and statutory right to bond out of jail *as opposed to any triggering of his due process rights by requesting a telephone call or independent BAC test.* The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the state's accusations. *State v. Carr,* 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct.App.1995) (citing *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973)).

Idaho Code § 19–2904 provides that a person charged with any offense, other than one punishable by death, "may be admitted to bail before conviction, as a matter of right." This is not, however, a right to immediate release, but rather a right to release without unnecessary delay upon the payment of bail. *See State v. Langley,* 62 Haw. 79, 611 P.2d 130, 132 (1980). In its order, the magistrate implicitly found that Cantrell's son and the bail bondsman initiated bail release upon their arrival at the jail.[1] The magistrate found that "[t]he defendant's son arrived at the Criminal Justice Facility at 5:00 p.m. prepared to pay bail and obtain the defendant's release" but that "[t]he defendant was not permitted to bond out until between 8:15 and 8:30 p.m." This over three-hour delay,[2]

___

1. The magistrate's findings have not been challenged on appeal.

2. At the suppression hearing Cantrell testified that, after taking the Intoxilizer test, he was placed in a cell for about an hour, then he was moved to another cell containing a bathroom for

which went unexplained by the state, was an unnecessary delay which resulted in frustrating Cantrell's right to gather exculpatory evidence, not limited to an independent BAC test, within a reasonable time following his arrest. This Court held in *Carr* that denying the defendant access to a telephone for approximately five hours after her arrest for DUI constituted a denial of the defendant's means by which she could establish her defense. *Carr* at 184, 911 P.2d at 777. In the present case, the defendant's initiation of bail release is far more compelling than a request for a telephone call. Accordingly, I respectfully dissent from the majority's holding.

another fifteen to twenty minutes, and then placed in the cage area, handcuffed to a rail, for about another hour. Cantrell testified that the cage area is where officers do the booking and from there he was released.