**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36257**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Opinion No. 89** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: December 21, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **DAN S. JACOBSON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Steven C. Verby, District Judge. Hon. Debra A. Heise, Magistrate

Order of the district court affirming the magistrate's denial of motion to suppress and motion to dismiss, <u>affirmed</u>.

Fred R. Palmer, Sandpoint, for appellant. Fred R. Palmer argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

GRATTON, Judge

This is an appeal from the district court's order affirming the magistrate's denial of a motion to suppress and a motion to dismiss. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Jacobson was arrested for misdemeanor driving under the influence of alcohol (DUI), Idaho Code § 18-8004. He was transported to the jail, read the statutory advisory form, and asked to take a breath test which he failed. Jacobson ostensibly made two telephone calls, and on the second call succeeded in contacting a bail bond company.[1] However, at the end of the

_____

[1] While this Court's review of the record--the transcript and a video recording of the jail-- only reveals that Jacobson made one telephone call prior to being taken to a holding cell, both parties accept the finding below that Jacobson made telephone calls at 2:54 a.m. and at 2:57 a.m.,

1

call, Jacobson became aggravated at the bail bond company for requiring a cosigner before it would provide bail. The jailers escorted Jacobson to a holding cell because of his agitation, even though Jacobson requested to make another call. About half an hour after Jacobson was booked and over three and one-half hours after he failed the breath test, he was allowed to use the phone again. He called his wife and was released when his bail was posted.

Jacobson filed a motion to suppress the breath test on due process grounds, claiming he was denied access to a telephone and, thus, his ability to secure alternative evidentiary testing or other exculpatory evidence. The magistrate denied the motion, and Jacobson entered a conditional guilty plea pursuant to Idaho Criminal Rule 11(a)(2). The magistrate stayed the sentence and judgment pending appeal to the district court. On appeal, the transcript of the hearing on the motion to suppress was delayed for over sixteen months before being lodged with the district court. Because of the delay in lodging the transcript, Jacobson filed a motion to dismiss with the district court pursuant to I.C.R. 48(a). After a hearing, the district court remanded the case to the magistrate for additional findings on both the motion to suppress and the motion to dismiss. The magistrate denied both motions and entered its findings. Thus, even though the motion to dismiss was initially filed with the district court, the magistrate first entertained the motion. After Jacobson again appealed, the district court affirmed the magistrate's decisions. Jacobson appeals.

**II.**

**DISCUSSION**

Jacobson appeals both the denial of his motion to suppress and the denial of his motion to dismiss. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions

which finding we will not disturb. Even if Jacobson was successful in making only one call it does not alter our analysis.

follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

**A.      Motion to Suppress**

Jacobson argues that his due process rights were violated when he was unable to make another telephone call to secure alternative evidence because the jailer ordered him to the holding cell after he talked with the bail bond company. He also contends that booking delays denied him due process. Constitutional due process and I.C. § 18-8002(4)(d) provide defendants with a right to obtain additional testing of their blood alcohol content and/or to secure or preserve exculpatory evidence when charged with an alcohol-related driving offense. *State v. Hedges*, 143 Idaho 884, 886, 154 P.3d 1074, 1076 (Ct. App. 2007). Jacobson argues only the constitutional violation and has waived any claim that I.C. § 18-8002(4)(d) was violated.

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.* It is the defendant's burden to demonstrate facts that constitute a due process violation. *See State v. Cantrell*, 139 Idaho 409, 412, 80 P.3d 345, 348 (Ct. App. 2003).

It is fundamental to our legal system that the State shall not deprive "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. It is a two-step process to determine due process rights: first, deciding whether a governmental decision would deprive an individual of a liberty or property interest within the meaning of the Fourteenth Amendment's Due Process Clause; and second, if a liberty or property interest is implicated, a balancing test must be applied to determine what process is due. *State v. Rogers*, 144 Idaho 738, 740, 170 P.3d 881, 883 (2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976)). "[M]inimum procedural due process requirements ultimately turn on a highly fact-specific inquiry." *Sonnleitner v. York*, 304 F.3d 704, 713 (7th Cir. 2002) (applying the *Mathews* three-part balancing test to a government employee's claim of an adverse employment action). The reviewing courts analyze the totality of the circumstances. *See State v. Payne*, 146 Idaho 548, 562, 199 P.3d 123, 137 (2008) (whether an out-of-court identification violated due process turns on the totality of the circumstances); *State v. Johns*, 112 Idaho 873, 879, 736 P.2d 1327, 1333 (1987) (applying the totality of the circumstances to evaluate whether a confession was voluntary

or violated due process); *State v. Carr*, 128 Idaho 181, 184, 911 P.2d 774, 777 (Ct. App. 1995) ("due process is flexible and calls for such procedural protections as the particular situation demands") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Due process is violated if an officer refuses to allow a DUI arrestee to contact legal counsel after any alcohol concentration test requested by the officer has been completed or refused. *Carr*, 128 Idaho at 185, 911 P.2d at 778. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Id.* at 184, 911 P.2d at 777 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). Because of the inherent exigency associated with the metabolism of alcohol in the blood, we have recognized that a delay in securing evidence can amount to a denial of the evidence. *Id.* at 184, 911 P.2d at 777. Thus, DUI arrestees have a liberty interest in timely securing evidence central to their defense, satisfying the first due process step.

Upon identification of a liberty interest, the court must evaluate the facts to determine if due process was satisfied. *Rogers*, 144 Idaho at 742, 170 P.3d at 885. The facts in *Carr*, 128 Idaho at 182, 911 P.2d at 775, are illustrative of a due process violation. Carr was arrested for DUI, taken to the county jail, and read the advisory form for evidentiary testing. *Id.* As the officer was reading the advisory form Carr requested to call her attorney. The officer appropriately informed her that she had no right to contact an attorney before the test. *See In re McNeely*, 119 Idaho 182, 187-88, 191, 804 P.2d 911, 916-17, 920 (Ct. App. 1990). Carr then took and failed the breath test. *Carr*, 128 Idaho at 182, 911 P.2d at 775. As the officer took Carr to her cell, she asked when she could talk to her attorney and was told she could make a call when jail personnel were ready. Carr made several more requests to contact her attorney, which were denied. Approximately five hours after her arrest, Carr was permitted to use the telephone, and she contacted a bondsman.

Carr argued that the officers infringed on her constitutional right to gather exculpatory evidence. *Id.* at 183, 911 P.2d at 776. The Court interpreted the argument as one of due process. Central to this analysis were the facts that: (1) Carr was arrested for DUI; (2) exculpatory evidence could only be collected if pursued promptly; (3) Carr requested to talk with her attorney; (4) her attorney could have advised her to obtain an alternative test; and (5) the State denied Carr access to a telephone for approximately five hours after her arrest. The State denied Carr the means to build her defense despite her repeated requests. The Court held that "when a

4

person is arrested for DUI and given an evidentiary BAC test, that person must be allowed, at a minimum, to make a phone call upon request to do so." *Id*. at 184, 911 P.2d at 777. The State provided no reason for refusing to allow Carr to call her attorney, and the State-administered breath test was suppressed because Carr was denied due process. *Id*. at 185, 911 P.2d at 778.

In *Cantrell*, 139 Idaho at 410, 80 P.3d at 346, Cantrell was arrested for DUI and he asked his son, who was present at the arrest, to make arrangements to bail him out of jail. Cantrell was taken to jail, read his advisory form, and failed a breath test. He did not request a phone call or alternative testing. His son arrived a half an hour later with a bail bondsman to post bail; however, Cantrell was not released until three and one-half hours after his son arrived. He argued the delay in releasing him violated his due process rights by preventing him from obtaining an alternative BAC test. The Court held that Cantrell did not present sufficient evidence to demonstrate that the State had denied him access to additional evidence. *Id*. at 412, 80 P.3d at 348. The presence of Cantrell's son and a bail bondsman was "not sufficient to inform the jail personnel of the detainee's desire to seek an additional BAC test under I.C. § 18-8002(4)(d) or to otherwise preserve exculpatory evidence." *Id*. Although we have not done so in the due process context, and need not in this case, under I.C. § 18-8002(4)(d) we have held that in order to invoke the statutory protections "a defendant must make a clear and unambiguous statement of his or her desire to obtain an independent BAC test, such that a reasonable police officer under the circumstances would understand the statement to be an affirmative assertion thereof." *Hedges*, 143 Idaho at 888, 154 P.3d at 1078.

The State argues that Jacobson was given an opportunity to and did in fact make a telephone call. The State asserts that the opportunity to make a call satisfied due process. The State emphasizes that the jail had a policy of allowing almost unlimited calls, that Jacobson was given an opportunity to make at least one call, possibly two, and that he successfully contacted a bail bond company. The State contends that due process only requires an opportunity for one call, that Jacobson was thus afforded due process and, that later events, including the denial of an opportunity to make another call, are irrelevant. The State relies on the language in *Carr* regarding a minimum of one call.

While Jacobson acknowledges that the State was initially due process compliant in providing for the call to the bail bond company, he argues that the jailers' subsequent actions in preventing him from making another call by placing him in the holding cell violated due process.

5

Jacobson argues that three occurrences at the jail violated his due process rights. First, he claims the jailers acted in an arbitrary or unreasonable manner in placing him in the holding cell because of his agitation, thereby preventing another call. Second, even if the jailers did not act arbitrarily or unreasonably in placing him in the holding cell, he argues the jailers should have thereafter determined that any agitation or risk that he posed had subsided and offered him an opportunity to make another call, but did not do so. Finally, Jacobson asserts that his booking process was unreasonably delayed, which further denied him the opportunity to secure exculpatory evidence. We will address these contentions in turn.

In regard to the question of whether the jail staff acted in an arbitrary or unreasonable manner in escorting Jacobson to the holding cell after his contentious call with the bail bond company, the magistrate found as follows:

> It is significant that Mr. Jacobson's anger at the bondsman after his second telephone call and before he was placed in the holding cell was objectively obvious as verified by Mr. Jacobson's testimony at the suppression hearing when asked whether he said anything to the deputy in a "derogatory and angry manner," and he responded that:
>> I think I might have said that it was ridiculous. I repeated probably after she told me that I had an attitude, you know, because I just—I couldn't believe that they, you know, wanted me to have a cosignor. You know it seemed oxymoron, you know. How do you do that?
> . . . Jail staff does not act unreasonably when they separate an objectively obvious and self-described angry inmate to allow the anger to dissipate.

In addition, Sergeant Inman, a jailer, testified that based on the jail log "[Jacobson] was arguing with the deputy or not doing what was asked of him so he was put back into holding." The magistrate observed Jacobson's testimony and his description of his frustration with the bail bond company. The jail's records reflect that Jacobson was arguing with a jailer. The magistrate's findings are supported by substantial evidence.

Inman also testified that jailers return any arrestee to a holding cell if they express an attitude, argue with the jailers, or do not follow directions. Jacobson asserts that the jail policy, which was followed in this case, is arbitrary or unreasonable as applied to DUI defendants whose bodies are metabolizing any alcohol in the blood. Jacobson argues that his conduct was not aggressive and that he did not pose a threat to others because of his agitation with the bond company. In essence, Jacobson asks this Court to hold that a DUI arrestee's conduct must be

overtly aggressive or threatening before jail staff can secure the arrestee such that access to outside communication is unavailable.

We recognize that arbitrary or unreasonable conduct by jail staff could result in the denial of an arrestee's access to the necessary means of securing exculpatory evidence and thereby violate due process. That did not occur in this case. Certainly competing interests exist. Jacobson had a substantial interest in a fair opportunity to defend against the State's accusations through timely securing potentially exculpatory evidence. *See Carr*, 128 Idaho at 185, 911 P.2d at 778. The State had a substantial interest in providing a safe, secure and orderly jail. *Cf. Balawajder v. Texas Department of Criminal Justice Institutional Division*, 217 S.W.3d 20 (Tex. App. 2006) (prison and jail administrators have a compelling interest in establishing necessary regulations and procedures to maintain good order, security and discipline). Jacobson was provided with the opportunity to make telephone calls and, in fact, made at least one such call. Pursuant to jail policy, but for his conduct, he had the opportunity to make additional calls. In that context, balancing the competing interests, jail staff did not act in an arbitrary or unreasonable manner in placing Jacobson in the holding cell or violate his due process rights by doing so.

Next, Jacobson argues that, even if the jailers were justified in placing him in the holding cell, his due process rights were violated when he was left in the holding cell until the booking process began without an opportunity to make another telephone call. Jacobson asserts that jail staff should have determined that any basis for placing him in the holding cell had dissipated and offered telephone access. While a due process right violation could be implicated in the situation where the State's justifiable basis for denial of access to a telephone evaporates, the record here fails to support such a determination.

Jacobson was in the holding cell for less than an hour. At no time while he was in the holding cell did he request to make a telephone call, to contact his attorney, or be granted access to the means to secure alternative evidence. There is no evidence in the record that Jacobson calmed down or that jail staff did or did not determine his state of agitation while in the holding cell. Before taking the breath test, Jacobson was advised of his right to obtain alternative evidentiary testing. Jacobson did not avail himself of this opportunity. He did not indicate to jailers that he wanted to talk with his attorney or be allowed to take other steps to secure or

7

preserve evidence.[2]  If Jacobson had alerted the jailers that he wanted to contact his attorney, then the State could weigh its responsibility to provide a secure jail with any responsibility to allow Jacobson additional access to outside communication.  He did not do so.  Jacobson has failed to demonstrate that the jailers' actions violated his due process rights.

Finally, Jacobson asserts that the jail's first-in, first-out booking policy and the length of his booking process violated his due process right to secure exculpatory evidence.  Jacobson argues the jail's policy of booking arrestees in the order they arrive at the jail violates DUI arrestees' due process rights.  He contends that all DUI suspects should be booked prior to arrestees for other offenses.  Jacobson's only support in arguing such a broad proposition is the "'inherent exigency' associated with DUI detainees."  While he argues it should have been the State's burden to prove the first-in, first-out policy was reasonable, it is the defendant that must show the policy violated due process.  The jail's first-in, first-out policy cannot be viewed in isolation.  Jailer Inman testified that, regardless of order of arrival, it is the jail's policy to move individuals that secure bail to the front of the booking line.  Thus, the jail's procedure allowed DUI arrestees to secure timely release by moving to the front of the booking line upon securing bail.  Even under Jacobson's proposed substitute procedure, DUI arrestees would not be released until they secure bail.  Jacobson failed to demonstrate the jail's policies represent a substantial risk of an erroneous deprivation of an arrestee's right.  The booking policy itself did not violate Jacobson's due process rights.

Beyond attacking the jail's policy, Jacobson contends that the circumstances of his booking process delayed his booking in a manner that violated his due process rights.  We disagree.  First, nothing in the record indicates that had Jacobson secured bail he would not have been moved to the front of the booking line.  Second, as noted above, the jail staff did not violate Jacobson's due process rights when he was placed in the holding cell until his booking process began.  Third, Inman testified that it takes approximately one hour to book an arrestee after the process begins.  Jacobson's booking process was completed in an hour and thirteen minutes.  The record does not reflect any request by Jacobson to make a phone call prior to the time when, after booking, he called his wife to obtain his release on bail.  There was no evidence that the

---

[2]  Under *Carr*, the request to contact a lawyer is essentially considered the same as an outright request for alternative testing or evidence preservation.

8

jailers failed to follow jail procedure or unreasonably delayed Jacobson's booking. Jacobson has not demonstrated a deprivation of his due process rights in the booking process.

Jacobson has not demonstrated a violation of his due process rights. The district court's decision affirming the magistrate's denial of the motion to suppress is affirmed.

**B.      Motion to Dismiss**

Jacobson contends that his motion to dismiss should have been granted due to the delay in the filing of the transcript in his initial appeal to the district court. Idaho Criminal Rule 54.7(b) requires the transcriber to prepare and lodge the transcript with the clerk of the trial court within thirty-five days of the payment of the estimated fee. The transcriber may, for good cause shown, apply to the district judge for an extension of time to prepare the transcript. I.C.R. 54.7(b).

Idaho Criminal Rule 48(a) allows a court to dismiss a criminal action upon its own motion or upon motion of any party:

> (1)      For unnecessary delay in presenting the charge to the grand jury or if an information is not filed within the time period prescribed by Rule 7(f) of these rules, or for unnecessary delay in bringing the defendant to trial, or
>
> (2)      For any other reason, the court concludes that such dismissal will serve the ends of justice and the effective administration of the court's business.

Idaho Criminal Rule 48(a) uses the permissive term "may dismiss" rather than a mandatory "shall dismiss" and, therefore, we review the trial court's decision for an abuse of discretion. *State v. Dixon*, 140 Idaho 301, 304, 92 P.3d 551, 554 (Ct. App. 2004). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine:   (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Jacobson entered a conditional guilty plea and, pursuant to the plea agreement, the magistrate stayed the judgment of conviction pending appeal. Jacobson paid the transcription costs on July 27, 2005. The transcripts should have been lodged on September 1, 2005. Over sixteen months later, on January 11, 2007, the transcripts were lodged with the district court. The court reporter testified that she was unable to timely complete the transcript because she was

out on medical leave from March 2006 until August 2006, and then worked only part-time until August 2007. She also testified that appeals from the magistrate division were a lower priority than appeals from the district court. She stated that Jacobson's attorney never called her to inquire about the transcript. She was also not aware of anyone being hired, during her sick leave, to prepare the backlog of transcripts left by her absence.

Jacobson contended that because of the stay he had not served his sentence and the DUI charge remained in the records. He asserted that the existence of the charge in the records impacted his ability to obtain insurance, rent vehicles and caused a psychological impact to him. Jacobson testified that he was denied an umbrella insurance policy on his business's vehicles because of the pending DUI case. The magistrate found that the delay in preparing the transcript was caused by the transcriber's sick leave and outside the control of the State. The magistrate also found that the stay was entered at Jacobson's request, that his claims of harm were speculative, and that he had failed to demonstrate prejudice.[3] Jacobson did not request that the stay be removed or at any time attempt to expedite the preparation of the transcript. While the delay was unfortunate, the "ends of justice" do not demand dismissal. Jacobson has failed to demonstrate an abuse of discretion and the district court's decision affirming the magistrate's denial of the motion to dismiss is affirmed.

## III.

## CONCLUSION

We affirm the district court's order affirming the denial of the motion to suppress because Jacobson has not demonstrated his due process rights were violated. We also affirm the district court's order affirming the denial of the motion to dismiss because Jacobson has not shown an abuse of discretion. The judgment of conviction is affirmed.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**

---

[3] We have held, under a due process analysis, that some showing of prejudice is necessary. *State v. Gallipeau*, 128 Idaho 1, 4, 909 P.2d 619, 623 (Ct. App. 1994).