# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1649-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOMYKO A. RAMOS,

    Defendant-Appellant.

_____

Submitted June 1, 2022 – Decided July 12, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 18-10-0823.

Joseph E. Krakora, Public Defender, attorney for appellant (Zachary Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Leandra Cilindrello, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jomyko A. Ramos appeals from the January 7, 2020 order of the Law Division terminating his enrollment in the pretrial intervention (PTI) program and reactivating a criminal charge to which he previously pled guilty. We affirm.

I.

In 2019, defendant pled guilty to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-2(c)(1) and 2C:14-3(b), in exchange for the State's recommendation, with the victim's consent, that he enter PTI for twenty-four months. He admitted to having engaged in intercourse with the victim, an acquaintance, without her consent.

The court sentenced defendant to the recommended term of PTI. The conditions of PTI supervision included that defendant was to: (1) complete domestic violence counseling; (2) undergo a substance abuse evaluation and follow the resulting recommendation; and (3) submit to random urine monitoring to ensure that he refrained from using illegal substances. The substance abuse conditions arose from defendant's admitted daily use of marijuana.

Defendant began PTI supervision on April 12, 2019. One month later, he failed to report to probation. He offered no explanation for the missed

A-1649-20

appointment. A week after that, he failed to appear for his substance abuse evaluation. He later claimed not to have received the scheduling notice mailed to him. On August 14, 2019, he again failed to report to probation. He offered no excuse for the missed appointment. On September 5, 2019, defendant failed to appear for his rescheduled substance abuse evaluation. He again claimed not to have received the scheduling notice mailed to him. Finally, defendant failed to enroll in domestic violence counseling and admitted to marijuana use on four occasions.

On September 11, 2019, a special probation officer (SPO) filed a violation of PTI setting forth these transgressions. He recommended defendant be terminated from PTI.

On October 15, 2019, the SPO sent a letter to the court retracting his termination recommendation and requesting defendant be continued on PTI, subject to completing domestic violence counseling and submitting to a substance abuse evaluation. The SPO stated that after issuance of the violation defendant came into compliance with the conditions of PTI by enrolling in domestic violence counseling and providing a negative random urine sample.

Prior to making a decision on the SPO's recommendation, the court gave defendant the opportunity to have a substance abuse evaluation. He was given

3 <span>A-1649-20</span>

written notice, which he signed in the presence of the court, that the evaluation was scheduled for October 22, 2019 at 9:00 a.m.

Defendant appeared on October 22, 2019, at 10:15 a.m., more than an hour late for his appointment. Because the evaluator had left to perform an evaluation scheduled for another location, defendant was not evaluated.

The trial court subsequently held a PTI termination hearing. The SPO, in effect, repeated the allegations in the September 11, 2019 violation report. With respect to defendant's failure to appear on time for the October 22, 2019 evaluation, the SPO testified that defendant told him he did not bring the written notice with him and mistakenly believed the appointment was scheduled for 10:00 a.m. The SPO acknowledged that defendant appeared late even under his mistaken belief with respect to the time of the appointment.

The SPO also testified defendant did not have insurance to cover the cost of domestic violence counseling and suggested financial uncertainty may have delayed his enrollment in counseling. The SPO testified that defendant lives with his parents, works intermittently as a freelance computer repair technician, and did not attempt to obtain insurance or a full-time position to cover the cost of counseling. The SPO explained:

> It was five months that I had been trying to get [defendant] to act upon what to do. I know there [were]

4

numerous conversations that we did have at our report dates of the importance of getting into the program especially . . . we talked about the timeline of the program, how long it normally takes, how much time he had remaining on his term of PTI and trying to solidify how long the program would take, which is normally a [twenty-six] week program, approximately six months, and then how long he had remining on his term of supervision.  By the time the violation was filed, there [were] already five months gone, so in those five months we had numerous conversations of, you know, we got to get on this, we got to get going, because there's sometimes a hesitation to start with the program because they want to clear all of financial barriers and such, so, yes, the violation was filed and then [defendant] entered [domestic violence counseling].

According to the SPO, defendant obtained $750 to cover the cost of the counseling from a family member after issuance of the written violation.  He acknowledged defendant had complied with the counseling since his enrollment.

In response to questions posed by the court, the SPO opined with respect to defendant's efforts to obtain health insurance or the funds to enroll in domestic violence counseling as follows: "I think he was trying, but he wasn't trying hard enough.  He was doing just enough to skirt by . . . ."  He continued, "I don't think he took the overall big picture of PTI . . . the opportunity afforded to him by the [c]ourt . . . fully seriously.  . . .  [W]e had numerous discussions about this, about

5

what this could lead to if he kept on the same path." The SPO also testified that he believed defendant had no empathy for the victim.

The SPO testified that the written notices of defendant's substance abuse evaluation appointments were sent to defendant's home address and that defendant had not changed his residence. The September 11, 2019 violation, the SPO testified, was sent to defendant by registered mail, which he failed to pick up at the post office.

An employee of the judiciary testified that she prepares written notices of substance abuse evaluation appointments for participants in the PTI program. Those notices are placed in a bin to be picked up by another employee responsible for mailing the notices. She testified that although she sometimes receives notices that are returned as undeliverable by the postal service, the notices she prepared for defendant were not returned to her.

On cross-examination, the SPO acknowledged defendant missed only two appointments to report to probation and the missed appointments were not in a row. He also agreed defendant had not missed an appointment since issuance of the written violation.

The Assistant Prosecutor informed the court that the victim had been consulted and was of the opinion that defendant's participation in PTI should be

6

terminated. She noted that the victim had expressed the extent to which the crime had negatively affected her life and her belief that defendant had been given a second chance, of which he failed to take advantage, when enrolled in PTI with her consent. Defendant did not testify at the hearing.

Judge Marilyn C. Clark issued an oral opinion terminating defendant's enrollment in PTI. Having determined the witnesses to be credible, Judge Clark found that defendant received the two notices of his substance abuse evaluation appointments and disregarded them. She also found that defendant did not testify because he would have been compelled to admit he received the notices or face a perjury charge. The judge also found defendant's claim to not have known the time of the third evaluation appointment to lack credibility, given that he signed the written notice that included the date and time of the appointment. In addition, the judge noted defendant offered no excuse for his missed reports to probation.

Judge Clark found that defendant failed to take his obligations under PTI seriously. She explained,

> I am absolutely mindful that it is sometimes, perhaps often, difficult for people to get insurance, but my firm conclusion here is that [defendant] has made virtually no efforts to find consistent gainful employment or to obtain insurance. He is now [twenty-seven] years old with a high school diploma and post-graduate

A-1649-20

certificates in the area of computers. In my mind there is no valid reason why he has not been gainfully employed except for lack of effort and I think, notwithstanding his recent couple of negative tests, the substance abuse issue, which has strongly affected his functioning for a long time.

The judge noted testimony from the SPO that shortly after entering PTI defendant stated his intention to move to Oregon or Michigan, without any specific employment or other plans in place. The judge found that, "[t]his, right in the beginning, indicates to me, along with all the other evidence, little to no interest in PTI from the beginning." The judge also found that she "fully shares" the SPO's view that defendant lacked empathy for the victim of his criminal sexual act, which she considered significant to her analysis.

Having "strongly conclude[d] that [defendant] had no good answer for any of the allegations, which occurred over many months," the judge terminated defendant from PTI. The judge acknowledged defendant had "made some effort since the violation[s,]" but found that he did "too little too late[,]" particularly given his failure to appear at the third substance abuse evaluation appointment.

A January 7, 2020 order terminates defendant's enrollment in PTI and reactivates the charges against him.[1]

---

[1] The court later sentenced defendant to a sixty-day term in the county jail and an eighteen-month period of probation. Defendant's sentence is not before us.

This appeal followed.  Defendant makes the following argument.

THE COURT ERRED IN TERMINATING RAMOS FROM PTI WITHOUT MAKING ANY FINDING AS TO WHETHER HE REMAINED A SUITABLE CANDIDATE FOR PTI, DESPITE TESTIMONY FROM HIS PROBATION OFFICER THAT HE WOULD SUCCEED IF CONTINUED IN PTI.

II.

Termination from PTI is governed by N.J.S.A. 2C:43-13(e), which provides:

Upon violation of the conditions of supervisory treatment, the court shall determine, after summary hearing, whether said violation warrants the participant's dismissal from the supervisory treatment program or modification of the conditions of continued participation in that or another supervisory treatment program.  Upon dismissal of the participant from the supervisory treatment program, the charges against the participant may be reactivated and the prosecutor may proceed as though no supervisory treatment had been commenced.

"[T]he conditional liberty at stake in [PTI] termination proceedings is closely analogous to that involved in probation or parole revocation applications."  State v. Devatt, 173 N.J. Super. 188, 194 (App. Div. 1980). "[B]efore termination may be ordered, minimum due process requires the State to afford defendants an opportunity to be confronted with evidence in support of or to present evidence against the conclusion that mere noncompliance with

9

a condition justifies withdrawal of the diversionary privilege." Ibid. Failure to comply with a condition of PTI is insufficient, standing alone, to warrant termination. The State must establish that defendant's failure or refusal to cooperate with the conditions of the program was done in "such a wil[l]ful and knowing manner as to have forfeited their right to further participation." Ibid. An "honest and unintentional" violation of a condition will not support revival of the criminal process against a defendant. Ibid.

In addition, whether termination is warranted "need not be established to any particular degree but must satisfy the judge in the exercise of sound discretion that the application to terminate is warranted." Id. at 195. "This requires a conscientious judgment which takes into account the particular circumstances of the individuals in deciding their fitness to continue within the diversionary program." Ibid.

It is undisputed that defendant was provided a hearing that comports with Devatt. In addition, there can be no serious doubt that the record contains sufficient evidence to support Judge Clark's conclusion that defendant willfully and knowingly violated the conditions of PTI by failing to report to probation on two occasions and consuming marijuana. Our review of the record also revealed sufficient support for the judge's finding that defendant received the

10

notices for his first two substance abuse evaluations and willfully failed to appear for those appointments. We also find support for the trial court's conclusion that defendant offered no legitimate explanation for arriving at his third evaluation appointment more than an hour late.

There is sufficient support in the record for Judge Clark's conclusion that defendant willfully failed to secure insurance or independent funding during a five-month period to enroll in domestic violence counseling. The rapidity with which defendant raised the funds needed to enroll in the counseling once he received the written violation is a telling indication of defendant's previous lackluster efforts to comply with this important PTI condition.

We are not persuaded by defendant's argument Judge Clark erred by allowing the victim to, in effect, determine whether defendant should be continued on PTI. The judge more than once acknowledged that the victim's opinion was not binding and the judge would determine whether termination of PTI was warranted. We see no error in the court considering that the victim, who had expressed the long-lasting harm she suffered as a result of defendant's acts, and who originally agreed to his admission to PTI, viewed defendant's behavior as a failure to take advantage of the opportunity afforded to him to avoid a criminal record.

11

While we agree with defendant's observation that Judge Clark did not expressly state that she found that defendant was not fit to continue in PTI, it is evident from the record that the judge reached that conclusion after carefully considering the circumstances of defendant's multiple violations. Judge Clark, who presided when defendant entered his plea and was familiar with the underlying negotiations that ultimately resulted in the State agreeing to defendant's admission to PTI, carefully considered the testimony adduced at the termination hearing. We cannot conclude that she mistakenly exercised her discretion when she determined that termination of PTI was warranted.

We have carefully considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1649-20